UNITED STATES of America,
Plaintiff-Appellant,

v.

Rickey WHITE and Elaine White,
Defendants-Appellees.

No. 83–2367.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1984.

Decided Aug. 27, 1984.

Flaum, Circuit Judge, concurred with opinion.

count indictment against Rickey and Elaine White, husband and wife, charging offenses under the Controlled Substances Act, Pub.L. 91–513, 84 Stat. 1242. Count I alleged that defendants conspired to possess with intent to distribute more than one hundred pounds of marijuana and one-quarter pound of cocaine. In particular, Count I stated that defendants, in furtherance of the conspiracy, purchased approximately one hundred twenty-five pounds of marijuana and one-quarter pound of cocaine from, among others, Vernon Michels, an unindicted coconspirator. Counts II and III charged defendants with the substantive offense of possessing marijuana and cocaine with the intent to distribute. A superseding indictment, returned on March 9, 1983, added a fourth count, which alleged that Elaine White obstructed justice by threatening a witness who had appeared before the grand jury.

In December 1982, after the grand jury returned the first indictment, the Whites telephoned attorney Michael Pritzker and discussed retaining him as defense counsel. The Whites claim they obtained Pritzker's name from a referral service in Washington, D.C., which recommended Pritzker as an experienced and competent criminal defense lawyer. The Government has suggested that the Whites obtained Pritzker's name from Vernon Michels, but the Whites deny this. During his initial discussion with the Whites, Pritzker learned that the Government would likely call Vernon Michels as a witness in the case. Pritzker informed the Whites that he had previously represented Michels, that the Government might object to the Whites' retaining Pritzker as defense counsel, and that he would telephone the Office of the United States Attorney in Springfield to discuss the Government's possible objection. Prior to filing his appearance in December, Pritzker advised the United States Attorney of the possible conflict in the case. The Government apparently took no action

Gregory K. Harris, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Springfield, Ill., for plaintiff-appellant.

Michael L. Pritzker, Chicago, Ill., for defendants-appellees.

Before PELL and FLAUM, Circuit Judges, and HENLEY, Senior Circuit Judge.*

PELL, Circuit Judge.

This is an interlocutory appeal from a pretrial order of the district court denying the Government's motion for disqualification of defense counsel in a criminal prosecution. A grand jury had returned a three-

---

* Judge J. Smith Henley, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

on the information until April 27, 1983, at which time it moved for the disqualification of Pritzker as counsel for either of the Whites.

Chief District Court Judge J. Waldo Ackerman held four evidentiary hearings prior to issuing a final ruling on the Government's motion. During these hearings, Judge Ackerman took documentary evidence and heard the testimony of the Whites, Pritzker, and Michels. On the first day of hearings, Judge Ackerman called the Whites before him and inquired whether they would voluntarily hire different counsel. Judge Ackerman identified some of the hazards the Whites would encounter if they retained Pritzker. For example, he told the Whites: "Now, normally a lawyer who has represented a client has some feeling that he cannot conduct cross examination strenuously .... [S]ometimes for tactical reasons it's important for your lawyer to make the witness look as bad as he can. Now, where you have got a lawyer who represented a witness, that may be a conflict of interest in his loyalty to you and the witness." The Whites stated they understood the risk Judge Ackerman identified, but they remained determined to retain Pritzker as defense counsel. At one point Mrs. White stated: "I would be really upset if you would take away our lawyer now because we have been going through this, as difficult as it is, and to start over again after all this time, I—you know. I would be terribly upset to start again now. It's been hard enough." Judge Ackerman thereupon decided to hold further hearings in order to ascertain the nature of Pritzker's potential conflict.

The hearings revealed the history of Pritzker's prior contacts with Michels. First, in 1976 Pritzker served as counsel to Michels' brother in a criminal prosecution. Vernon Michels was not a defendant in that case, but he did discuss the case with Pritzker and he did pay for his brother's defense. Second, Pritzker represented Michels in April 1981 following Michels' arrest in Chicago on charges of possessing cocaine. Pritzker had several private conversations with Michels about the case and,

during some of those conversations, took notes on the information which Michels disclosed. Pritzker submitted the notes, with Michels' consent, to Judge Ackerman, who reviewed them *in camera*. Third, in the summer of 1981, Pritzker represented Michels in Florida, but he did not appear in any court proceeding on Michels' behalf. Michels apparently was abducted from Illinois to Florida and held in Florida against his will by unpaid and evidently impatient drug suppliers. Michels escaped from his captors and made contact with the Federal Bureau of Investigation as well as with state law enforcement agencies. Michels discussed the events leading to the abduction with officials of those organizations. After those conversations were underway, Michels telephoned Pritzker, who flew to Florida and again had private conversations with Michels concerning drug trafficking activities. Fourth and finally, Pritzker represented Michels before a grand jury in the Central District of Illinois. The grand jury served a subpoena on Michels commanding him to testify in connection with an investigation of drug trafficking. That investigation ultimately led to the indictments in this case. Pritzker filed motions to delay or entirely excuse his client's appearance before the grand jury. Michels, however, eventually decided to appear before the grand jury, and Pritzker at that point moved to withdraw as Michels' counsel. That motion was granted, and Michels obtained appointed counsel.

Michels testified before Judge Ackerman that he had confidential conversations with Pritzker when Pritzker served as his lawyer. Michels stated that he believed those conversations to be privileged and that he would not waive his attorney-client privilege. Michels' testimony before Judge Ackerman also revealed that Michels had entered into a plea agreement with the Government. Part of that agreement required Michels to cooperate fully with the Government and reveal the full extent of his involvement in drug trafficking. Michels volunteered to Judge Ackerman that he had given Pritzker details of one drug

transaction which he had not revealed to the Government. Finally, Michels admitted to Judge Ackerman that he still owed Pritzker for the prior legal services Pritzker had rendered.

After reviewing the evidence he received and the testimony he heard, Judge Ackerman informed counsel for the parties that he would deny the Government's motion for disqualification if the Whites waived their right to conflict-free representation. Judge Ackerman reasoned that he could shape Pritzker's cross examination of Michels in such a way as to protect the attorney-client privilege. Judge Ackerman stated: "Of course, there are things I have to do to protect ... the witness .... [C]ounsel may not cross examine as to anything told him in ... confidence, ... and [Michels] has a right to decline to answer anything based on privileged communication, and I have a duty to prevent inadvertent disclosures of confidential matters."

Judge Ackerman then called the Whites before him for a second time and explained to them in plain terms that their retention of Pritzker could be unwise. He explained to the Whites that Pritzker labored under three conflicts. First, Pritzker had formerly represented a witness who was likely to testify against them. Second, that witness was financially indebted to Pritzker. Third and finally, Pritzker was to act as counsel for each of the Whites in a single proceeding.

Judge Ackerman made clear to the Whites their case could be substantially weakened because Pritzker might be unable to cross-examine Michels effectively:

Now, when Mr. Pritzker represented him [Michels], any communications, any private or confidential communications that he, the witness, made to Mr. Pritzker, Mr. Pritzker is not going to be able to cross examine him about it.

The best example I can think of—and, of course, I don't know what Vern Michels said to Mr. Pritzker. So I can't tell you what we're talking about except generally, but let's suppose that he had told Mr. Pritzker that you all had—didn't buy anything from him, and he didn't know you, and had no substance at all. Then at the trial he testifies that he sold drugs to you.

Okay.

Now, Mr. Pritzker is not going to be permitted to cross examine him and say, didn't you tell me that the Whites didn't buy drugs from you, and that you didn't know anything about the Whites, and that sort of thing. He would not be able to cross examine him.

Another lawyer would be able to.

The Whites responded that they understood Judge Ackerman's illustration but still wanted to retain Pritzker. Judge Ackerman then permitted the United States Attorney to admonish the Whites. The U.S. Attorney stated to the Whites:

I think Mr. Pritzker would not be at liberty to cross examine Vern Michels concerning any—for example, any other lies that Vern Michels has told. If Vern Michels would have told Michael Pritzker that he was going to tell anything he could just to stay out of jail, Mr. Pritzker would not be able to cross examine him about a statement like that. Just basically any lies that Vern has told in the past or what might relate to this case. Mr. Pritzker would not be able to bring those up because they would be confidential communications.

Also potentially there would be a problem with other drug sales to other individuals, and other criminal conduct that Mr. Pritzker would perhaps know about because Mr. Michels had told him. If they were confidential communications, Mr. Pritzker could not bring those up in cross examination.

The Whites replied in unequivocal terms that they wished Pritzker to remain in the case as their defense counsel. Judge Ackerman then explained to the Whites why their defense could be impaired because of the second and third conflicts. With respect to the third conflict, Judge Ackerman told the Whites that joint representation entailed numerous risks and that they should not choose to be jointly represented

in order to save the cost of hiring a second attorney. If the Whites were unable to afford independent trial counsel, Judge Ackerman explained, the state would appoint a second attorney at no cost to the Whites. For the third time, the Whites expressed their desire to continue with Pritzker. Judge Ackerman then accepted the Whites' waiver of their right to counsel whose effectiveness is not impaired by divided loyalty.

On June 14, 1983, Judge Ackerman entered a final pretrial order denying the Government's motion to disqualify Pritzker as defense counsel. The Government now appeals from that pretrial order. Judge Ackerman has delayed trial pending resolution of this appeal.

The substantive issues of the controversy arise out of an increased emphasis on ethical concerns involved in attorneys' conflicts of interest, a situation arising both in criminal and civil cases. The merits issue is one which has been addressed in other circuits and the district judge was aware that there was a conflict among the circuits, stating he relied on a Second Circuit case, apparently *United States v. Armedo-Sarmiento*, 524 F.2d 591 (2d Cir.1975), which reversed a denial of the right of defendants to have retained attorney of their own choosing if they knowingly and intelligently waived their constitutional rights, particularly the right to have counsel free from conflicts of interest. The Government relies on *United States v. Provenzano*, 620 F.2d 985 (3d Cir.1980), *cert. denied*, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1981). In that case the Third Circuit upheld the decision of the district court to disqualify the defense attorney because the attorney had once represented a Government witness in an earlier trial. The court ruled that the defense attorney was in a conflict situation between the duty vigorously to represent the new client and the duty of loyalty to the old client, since confidences relating to the prior charges against the former client would be useful to impeach that client when he testified for the Government.

The facts of the present case, as we have outlined them, could very well, as the Government in effect argues, justify a per se rule of disqualification. The Government's position indeed is that the court had no discretion under the circumstances where a real conflict of interest existed and the former client refused to waive his privilege. The court had no choice other than to disqualify attorney Pritzker. The Government also argues that the court was "compelled" to disqualify Pritzker pursuant to the Illinois Code of Professional Responsibility as approved by that particular district court. On the other hand, Judge Ackerman displayed great sensitivity to the rights of the defendants who were actually being tried in the case going through, as we recited, a succession of hearings, increasing on each occasion emphasis on the undesirable aspects of the representation by Pritzker. There would seem to be little question that the Whites knowingly and intelligently waived their rights not only to what could well be their most effective representation by limitations which the judge placed on cross-examination by Pritzker but also the conflict of representing co-defendants, even though husband and wife.

Unfortunately, however, no matter how interesting and no matter how important this case may be, and we have outlined the facts simply to illustrate the nature of a conflict that seems to be recurring in great frequency, we cannot address it unless we have jurisdiction. Both parties contend we do have jurisdiction of this interlocutory appeal under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). The conflict issue is one of first impression in this Circuit. The district court recognized this in its order continuing the trial date, which order concluded as follows:

Further, the issue has required four separate hearings and briefings to date. The magnitude of the issue is significant to the rights of the parties and witnesses so that the ends of justice were best served by a detailed consideration of the question. A continuance in the interests

of justice is therefore granted commencing April 27, 1983 and continuing up through and including Interlocutory appeal.

 The concern over the merits questions apparently diverted attention from a recognition of the fact that interlocutory appeals are not ordinarily favored. The issue might properly have been one to certify for interlocutory appeal under 28 U.S.C. § 1292(b) but that subsection is applicable only to civil actions. The continuance order clearly, of course, is not a final judgment under 28 U.S.C. § 1291 nor does it fit into any other category of permissible interlocutory appeal under 28 U.S.C. § 1292.

 The Government may appeal interlocutorily in criminal cases under 18 U.S.C. § 3731 but that right is limited to orders of suppression or exclusion of evidence or similar rulings. The rationale underlying the statute is that where evidence should not have been excluded but because of its unavailability there could be an acquittal with the Government never being able to raise the question by virtue of its inability to appeal. The Government in arguing that the present appeal is a proper one contends that the same rationale is applicable here and if there is an acquittal the Government then cannot appeal the fact that Pritzker was allowed to remain in the case. We think, however, it is significant that it was apparently necessary to have an act of Congress to permit the appeal in the suppression case and there is no corresponding legislation here. The particular concern which the parties and the court addressed at the time the appeal was launched was the barring of the Speedy Trial Act's application. The court therefore in its order relying upon the language in 18 U.S.C. § 3161(h)8(A) found that the "ends of justice are basically served by an in-depth review of the legal issues that have been raised and considered by the court."

All of this, of course, doesn't help us any if we don't have jurisdiction of the appeal as authorities cannot give the court jurisdiction simply by agreeing that it has it. Since the time of the continuance order the subject of immediate review under the *Cohen* doctrine has been addressed by the Supreme Court in *United States v. Flanagan,* — U.S. ——, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). Prior to the district court's order here in *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Supreme Court held that a pretrial denial of a motion to disqualify counsel in a civil case is not appealable prior to trial under 28 U.S.C. § 1291 as a final collateral order under *Cohen.* In *Firestone,* however, the court of appeals had also stated that orders *granting* motions to disqualify counsel would be appealable under section 1291. The Supreme Court in *Firestone* said that it did not express any opinion on that matter nor would it express any view on whether an order *denying* a disqualification motion for a criminal case would be appealable under section 1291. *Id.* at 372 and n. 8, 101 S.Ct. at 672 and n. 8. In *Flanagan* the Court did decide one of the reserved questions, i.e., whether a district court's pre-trial disqualification of defense counsel in a criminal prosecution is immediately appealable under section 1291 and held it was not.

Unfortunately, this decision still leaves open the question presented by the case before us because here we are not dealing with a disqualification but with a denial of disqualification. If the Government's motion for disqualification had been granted over the objections of the Whites and thereafter there had been a conviction, the Whites could appeal as one of the grounds of error the granting of the motion to disqualify. On the other hand, if there had been an acquittal, the Government would have no reason for raising the issue because it would have got just what it asked for in the trial court. In its brief in this court, the Government indicated awareness of the fact that *Flanagan* was pending in the Supreme Court. In *Flanagan* the Government had argued that an order disqualifying defense counsel was not immedi-

ately appealable because if erroneous it was not immune from review following judgment. The Government also argued in *Flanagan* that it was not collateral to the merits in a criminal prosecution, one of the tests in *Cohen*. In the case in this court, however, the Government argues, as we have noted above, that the denial of the Government's motion to disqualify defense counsel is effectively immunized from review because of double jeopardy principles, and further the disqualification question is truly collateral under *Cohen*. Summarizing, the Government argues that:

> The instant case should be considered for interlocutory appeal. The trial court has refused to disqualify the former attorney of the chief government witness. This issue is completely separate from the merits of the trial of Rickey and Elaine White, as it involves the attorney-client privilege of a witness, not the defendants. If the case proceeds to trial the issue will be mooted. Further, the issue is completely separate from the merits of the action and would be effectively unreviewable after the trial of Defendants Rickey White and Elaine White.

While we have some sympathy for the Government's position, the disabling impact to a prosecution would seem much more acute in the case of suppression of evidence without which a conviction cannot be obtained and yet an act of Congress apparently was deemed necessary there to permit an interlocutory appeal.

In reaching the decision we do in this case that the attempted interlocutory appeal must be dismissed, we are persuaded by two factors. The first of these is the strong significance given in *Flanagan*, even though that case involved the grant of a motion to disqualify rather than a denial, in the desirability and necessity for a speedy trial, proceeding to a final appealable judgment without unnecessary interruptions. While the present case is factually different, as we have noted, we see no reason for reaching a different result here. Certainly if the Whites were denied the attorney they so obviously wanted to represent them, they, of course, could appeal

after conviction but appeals are always uncertain as to their success, besides being costly and time consuming, with final adjudications of guilt or innocence several years down the road. The Whites have been adequately warned in the present case of the problems in Pritzker's representing them and they have consciously made the choice to take the risk.

A second problem in the present case is that of the Government's standing to raise the issue. The Government does not articulate what is or well could be its real interest in this case which is that Michels could turn out, under the circumstances of being cross-examined by his former attorney, a less desirable witness than if he were being interrogated by a stranger. The Government does not advance any such theory and we decline to reach it other than observing that the Government, being a party in litigation, is presumably also entitled to a fair trial. The Government, however, seeks to avoid the rationale of *Flanagan* by focusing not on the prejudice to its own case but rather on the inadequate protection of witness Michels' attorney-client privilege.

■ The Government, however, cannot succeed under this theory because it lacks standing to bring an appeal based upon the attorney-client privilege of Michels. That privilege belongs solely to Michels, and not at all to the Government. If Michels believes the district court inadequately protected his privilege, he must bring his grievance to the attention of the district court. For example, Michels can refuse to testify and can then argue the inviolability of the attorney-client privilege on a motion to quash a subpoena compelling his testimony. The Government, however, cannot appeal based upon the inadequate protection of someone else's privilege. In so saying, we are not unmindful of the duty of every lawyer to bring to the attention of the trial court possible ethical problems in the case; nor do we find fault with the Government for having done so in this case.

Because we are dismissing the appeal, it is entirely possible that the present issue might never be susceptible of being reviewed either on an interlocutory basis, or after final judgment because of double jeopardy. This is unfortunate but we choose to believe that if a district court gives the careful attention to the problem that the district court did here and displays the sensitivity to the issue that the judge did, the potential for harm should be minimized. The only other alternative, of course, would be legislation if it is deemed by the Congress that the issue sufficiently justifies that course.

Accordingly, for the reasons set forth above, the appeal is

DISMISSED.

FLAUM, Circuit Judge, concurring.

I agree with my brethren that the denial of a motion to disqualify a defense attorney in a criminal case because of the attorney's prior representation of a government witness is not appealable as a collateral order. However, I disagree with the reasoning set forth in the majority opinion, and thus, I concur.

To be appealable as a collateral order, a trial court order must meet three conditions. It "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). The essential inquiry is whether any harm to the interests sought to be protected by interlocutory appeal can be substantially repaired by a reversal of the district court's order on appeal from a final judgment. *See Illinois v. F.E. Moran, Inc.,* 740 F.2d 533 at 536–537 (7th Cir.1984). *See also Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (refusal to dismiss indictment for violation of double jeopardy clause cannot be reme-

died on appeal from conviction because the right at issue is the right not to be tried).

In determining whether the three conditions for a collateral order are met in this case, I deem it appropriate to focus on the witness Vern Michels's interests. The defendants have waived their rights after careful and repeated admonition by the district court.[1] Furthermore, the attorney-client privilege at issue here belongs to Michels, not to the defendants, and Michels has testified that he does not waive his privilege. Thus, the inquiry must be whether an appeal now is necessary to protect Michels's privilege. The Supreme Court has never addressed the appealability of attorney disqualification orders in the context of protecting a witness's rights. However, its two decisions on appeals of disqualification orders—*Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), and *United States v. Flanagan,* —— U.S. ——, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984)—provide some background.

In *Firestone,* the Court held that an order denying a motion to disqualify counsel in a civil case is not appealable as a collateral order. The Court found that the denial of a disqualification motion " 'conclusively determine[s] the disputed question' because the only issue is whether challenged counsel will be permitted to continue his representation." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. at 375–76, 101 S.Ct. at 674–75. The Court stated that it would assume without deciding that the disqualification issue was completely separate from the merits of the action. The Court concluded that the order was not appealable, however, because the denial of disqualification could be reviewed on appeal from a final judgment. It reasoned that "[t]he propriety of the district court's denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated

---

**1.** This does not preclude defendants, if convicted, from arguing on appeal that their waiver was not voluntary, knowing, and intelligent.

.... [S]hould the Court of Appeals conclude after the trial has ended that permitting continuing representation was prejudicial error, it would retain its usual authority to vacate the judgment appealed from." *Id.* at 377–78, 101 S.Ct. at 675–76. The Court refused to express any view as to whether an order denying disqualification in a criminal case is appealable as a collateral order. *Id.* at 372 n. 8, 101 S.Ct. at 672 n. 8.

In *Flanagan,* the Court held that the granting of a pretrial motion to disqualify defense counsel in a criminal case because of multiple representation is not appealable as a collateral order. *Flanagan v. United States,* —— U.S. ——, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). The Court stressed the compelling interests on the part of both the defendant and society in prompt trials in the criminal context and noted that it "has interpreted the requirements of the collateral-order exception with the utmost strictness in criminal cases." *Id.* 104 S.Ct. at 1055. The Court refused to decide whether defendants would have to show prejudice to their defense to establish a violation of their right to their chosen counsel. Instead, the Court held that if prejudice were presumed, the order could be effectively reviewed on appeal from a final judgment; if prejudice must be demonstrated, the order is not completely separate from the merits of the case. Finally, the Court concluded, the case did not warrant expanding the small class of criminal orders covered by the collateral order doctrine because the costs of delaying a criminal trial outweigh any potential benefits of immediate review. *Id.* at 1056–57.

Applying these principles to this case, I find that the district court's denial of the motion to disqualify is not an appealable collateral order. First, the order denying disqualification conclusively resolves the disputed question. See *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. at 375–76, 101 S.Ct. at 674–75. Second, it is clear that the issue here truly is collateral—Michels's attorney-client privilege is completely separate from the merits of the criminal case against the defendants. Thus, this appeal meets the first two criteria of the *Cohen* test.

The disqualification issue also is "effectively unreviewable on appeal from the final judgment." If defendants are acquitted, there can be no appeal. If defendants are convicted, the choice as to whether to appeal belongs to them, not to Michels. If there is an appeal, the issue might not be raised. A witness does not have standing to assert a violation of his own rights on appeal from a defendant's conviction in a criminal case. Similarly, a defendant cannot raise a violation of a witness's rights in the absence of prejudice to the defense. Thus, this case is not like *Firestone* in that we will not be able to correct any error through our "usual authority to vacate the judgment appealed from." See *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. at 378, 101 S.Ct. at 675. Finally, Michels's privilege cannot be fully vindicated through appeal. If he answers the defense attorney's questions on cross-examination, his privilege has been irretrievably violated and the issue is moot. In this sense, his right is analogous to the double jeopardy right. See *Flanagan v. United States,* 104 S.Ct. at 1055–56.

Even though this case meets the third criterion of the *Cohen* test, I am compelled to find that it is not appealable as a collateral order because there is a means of appellate review that is fully effective. Michels must take the stand and refuse to answer any questions that he perceives violate his privilege. If the trial court disagrees with his perception, Michels will be found in contempt of court. The contempt order is of course immediately appealable. See *Cobbledick v. United States,* 309 U.S. 323, 328, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940). Such an appeal can fully protect Michels's claim of privilege. This court can assess at that time the impact of cross-examination on his privilege; this is not a case where the impact cannot be assessed

until the trial is completed.[2] The Supreme Court has recognized that, in determining whether to allow an appeal as a collateral order, an appeal from a contempt order is an alternative to appeal from final judgment. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. at 378, 101 S.Ct. at 675 (citing *Cobbledick v. United States,* 309 U.S. 323, 327, 60 S.Ct. 540, 542, 84 L.Ed. 783 (1940) (appeal of discovery order in grand jury proceeding)); *see also United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971) (appeal of denial of motion to quash grand jury subpoena duces tecum); *Alexander v. United States,* 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906) (appeal of witness who refused to answer questions of hearing examiner).[3] *Cf. In re April 1977 Grand Jury Subpoenas,* 584 F.2d 1366, 1368–71 (6th Cir.1978) (en banc) (appeal from denial of disqualification motion by defendants in grand jury proceedings), *cert. denied,* 440 U.S. 934, 99 S.Ct. 1277, 59 L.Ed.2d 492 (1979). Thus, because Michels has an option to obtain appellate review of his claim of privilege, allowing an appeal now as a collateral order is not necessary to protect him.

Finally, it is appropriate to assess the costs and benefits of postponing our review until a witness appeals from a contempt jurisdiction. *See Flanagan v. United States,* 104 S.Ct. at 1057. Postponing review may lead to greater delay in criminal trials. One purpose of the final judgment and collateral order rules is to determine the most efficient time for appeal of an issue. The Supreme Court has noted that a delay before trial pending appeal "exacts a presumptively prohibitive price." *Id.* An appeal from a contempt judgment may create even greater delays. A pretrial appeal allows the issue to be disposed of as a discrete matter before the trial begins, before a jury is impanelled, and before the government produces what may be a considerable amount of evidence. An appeal from a contempt judgment disrupts the trial itself; the government will be unable to go forward with its case until the issue is resolved on appeal. As a practical matter, given the length of most appeals, the jury will have to be dismissed, a new jury impanelled, and the case begun anew. This is a waste of resources on all parts and a breach of the strong interests of the defendant and society in a speedy trial. Weighed against these costs is the chance that a contempt order, and an appeal from the order, will not be necessary. The district court has the authority to limit the scope of cross-examination so as to attempt to protect a witness's privilege. While I have doubts as to whether sufficient limitation is ever possible as a matter of law, it is possible that a witness may be satisfied with the limits that the district court imposes. A witness might also change his mind and decide to waive his privilege; the district court might reassess its decision and disqualify the attorney. Because postponing review provides a chance that there will be no appeal and because of the high costs of delay resulting from any appeal, the costs of postponing review are not sufficiently compelling to warrant expanding the collateral order doctrine for this case.[4]

2. Arguably, this is where Michels's attorney-client privilege and the defendants' right to counsel of their choice intersect. This court cannot fully assess the impact of the order on the defendants' rights until the trial is completed. *See Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377, 101 S.Ct. 669, 675, 66 L.Ed.2d 571 (1981). That is true, however, regardless of whether we allow an appeal now or only from the contempt judgment.

3. None of these cases cited arose in the context of an ongoing criminal trial. However, two members of the Supreme Court have indicated that the denial of a motion to quash a subpoena issued during an ongoing criminal trial is not immediately appealable. *New York Times Co. v. Jascalevich,* 439 U.S. 1301, 98 S.Ct. 3058, 58 L.Ed.2d 9 (White, Circuit Justice, 1978); *New York Times Co. v. Jascalevich,* 439 U.S. 1304, 98 S.Ct. 3060, 58 L.Ed.2d 12 (Marshall, Circuit Justice, 1978). Justice Marshall noted that one to whom a subpoena is issued can appeal the validity of a subpoena only by refusing to obey and appealing the contempt judgment. *Id.* at 1305, 98 S.Ct. at 3061.

4. It may well be unfair to expect a nonparty witness to risk a contempt judgment to obtain appellate review of a plausible claim of attorney-client privilege. However, this court rejected a similar argument in holding a discovery

Moreover, in certain situations involving extraordinary circumstances, a writ of mandamus, 28 U.S.C. § 1651, may be appropriate as a means of pretrial appellate review. *See In re April 1977 Grand Jury Proceedings,* 584 F.2d at 1371–73 (Edwards, J., concurring). Thus, I conclude that the district court's order here denying disqualification is not appealable. *Accord United States v. Tosh,* 733 F.2d 422 (6th Cir.1984).

Because we lack jurisdiction to decide this appeal, we need not decide whether the prosecution has standing to move to disqualify a defendant's attorney because of the attorney's prior representation of a government witness. However, because the majority opinion addresses the issue, and because I believe that this discussion may chill what I believe is important and necessary behavior by the prosecution, I deem it important to note that I believe the prosecution not only may, but also must, raise such matters to the district court.

Courts in other circuits have allowed persons other than the former client to move for disqualification. *See Kevlik v. Goldstein,* 724 F.2d 844, 847–48 (1st Cir.1984); *United States v. Clarkson,* 567 F.2d 270, 271 n. 1 (4th Cir.1977); *Brown & Williamson Tobacco Corp. v. Daniel International Corp.,* 563 F.2d 671, 673 (5th Cir.1977).[5] These cases have relied on the ethical responsibility of all attorneys to bring to the attention of the court possible ethical violations by other attorneys. *See* Model Code of Professional Responsibility, DR 1–103(A). A prosecutor has a special obligation to raise possible ethical problems to the court's attention. *Cf. United States v. Cunningham,* 672 F.2d 1064, 1072 n. 7 (2d Cir.1982) (government's interest in preserv-

ing integrity of criminal proceeding gives it standing to move for disqualification of defense attorney). In addition, the prosecutor has an even heavier burden of ensuring fairness to all persons involved in a criminal proceeding. Finally, the prosecution has an interest in protecting its witnesses. *United States v. James,* 708 F.2d 40, 44–46 (2d Cir.1983); *see United States v. DeLuna,* 584 F.Supp. 139 (W.D.Mo.1984). Thus, in my view, the prosecution has an obligation to move to disqualify a defense attorney where there is potential for ethical problems.

order directed to a nonparty witness to be non-appealable. *Ryan v. Commissioner,* 517 F.2d 13, 18–19 (7th Cir.), *cert. denied,* 423 U.S. 892, 96 S.Ct. 190, 46 L.Ed.2d 124 (1975). The court reasoned that allowing such appeals would crowd appellate dockets and lead to delays in litigation. Although *Ryan* did not deal with the attorney-client privilege at issue here, its reasoning is applicable to this case. *See also De Masi v. Weiss,* 669 F.2d 114, 122 (3d Cir.1982); *In re Benjamin,* 582 F.2d 121 (1st Cir.1978).

**5.** Some courts have denied standing to persons other than the former client to raise the attorney-client privilege where the former client is willing to waive the privilege. *See, e.g., In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 88 (5th Cir.1976). We need not address this issue because Michels has stated that he does not waive his privilege.