**EMMIS OPERATING COMPANY,**
**Plaintiff,**

v.

**CBS RADIO INC., Defendant.**

No. 1:06–cv–0920–LJM–WTL.

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 30, 2007.

G. Daniel Kelley, Jr., Michael A. Blickman, Scott D. Matthews, Ice Miller LLP, Indianapolis, IN, for Plaintiff.

James Dimos, Joel E. Tragesser, Thomas L. Davis, Locke Reynolds LLP, Indianapolis, IN, for Defendant.

### ORDER

McKINNEY, Chief Judge.

This cause is now before the Court on defendant's, CBS Radio Inc. ("CBS"), Motion to Disqualify Plaintiff's Counsel and plaintiff's, Emmis Operation Co. ("Emmis"), corresponding Motion to Dismiss Defendant's Motion to Disqualify Counsel. In this suit Emmis alleges that in December 2005 and January 2006 CBS wrongfully interfered with Emmis' employment contract with Walter Z. Berger ("Berger"), Emmis' former Executive Vice President, Chief Financial Officer and Treasurer, when CBS interviewed and ultimately

hired Berger as its own Chief Financial Officer in early 2006. Emmis' current counsel, Ice Miller, LLP, represented Berger in negotiations of the original employment agreement between he and Emmis. CBS contends that disqualification of Ice Miller is appropriate because Ice Miller's representation of Emmis in the instant matter presents a conflict of interest with Ice Miller's former client, Berger, and through CBS' privy with Berger, a conflict with their collective interests in this suit. Berger sought, and has been granted, leave to intervene in this action for the purpose of joining CBS in its motion to disqualify.

On March 23, 2007, the Court held a hearing on this matter, and after considering the arguments and evidence, both written and oral, the Court **GRANTS** Defendant's Motion to Disqualify Plaintiff's Counsel and **DENIES** Plaintiff's Motion to Dismiss.

### I. *BACKGROUND*

In January or February 2003, at the suggestion of Mickey Levitan, Emmis' Executive Vice President of Human Resources, Berger retained Ice Miller to represent his interests in negotiations with Emmis regarding an employment agreement. Berger Aff. ¶ 4. At the time of the negotiations, apparently Ice Miller felt it necessary to ask Emmis to sign a waiver of potential conflict of interest because Ice Miller had represented Emmis in some other matters;[1] Emmis consented to Ice Miller's representation of Berger. Barrett Aff. ¶¶ 8, 9 & Exh. A. Berger attests that he felt comfortable with Ice Miller's representation of him, in part, because he had been told that Ice Miller had not done much work for Emmis. Berger Aff. ¶ 6.

---

1. The Court notes that there is a dispute over how much work Ice Miller had performed for Emmis at the time of its representation of Berger; however, resolution of this dispute is not necessary to decide the instant motions.

As written, the employment agreement was effective March 1, 2002, and extended through February 28, 2006. Compl. Exh. A, ¶ 2. The agreement covers twenty-five pages and consists of both financial and other pertinent terms including an arbitration clause, effective for cases of breach by either party, and clauses related to rights of the parties to terminate the contract. *See, generally, id.* The employment agreement also specifically lists Martin J. Klaper ("Klaper"), a partner at Ice Miller, as the attorney to notify on behalf of Berger. *Id.* ¶ 14.

Klaper attests that the essential financial terms of the original agreement had already been drafted by the time he got involved with negotiations. Klaper Aff. ¶ 7. A draft agreement had already been prepared. *Id.* Klaper affirms that he spent approximately ten hours reviewing the draft agreement and finalizing negotiations between the parties. *Id.* ¶ 8. He states that his representation of Berger ended in May 2003. *Id.*

According to the evidence, in February 2005, Emmis and Berger amended the compensation terms of the 2002 agreement and extended the term of the original agreement through 2009. Berger Aff. ¶ 7; Barrett Aff. ¶ 11; Compl. Exh. A, Letter, Re: Am. to Employment Agreement, Feb. 7, 2005 ("2005 Am."). The amendment incorporates the remainder of the original agreement. 2005 Am. at 1. Berger did not retain counsel to negotiate the amendment. Berger Aff. ¶ 7; Barrett Aff. ¶ 11.

According to the allegations in the Complaint, on December 2, 2005, Berger notified Emmis of his intent to leave Emmis' employ. Compl. ¶ 21. Berger informed Emmis that he planned to depart the company on January 4, 2006. *Id.*

On June 13, 2006, Emmis filed the instant suit against CBS alleging that CBS intentionally interfered with the employment contract between Emmis and Berger to Emmis' detriment. *Id.* ¶¶ 18–33. In addition, according to the terms of the original employment agreement, Emmis filed an arbitration proceeding against Berger alleging breach of the employment agreement. Barrett Aff. ¶ 12. Original counsel for Emmis in both this matter and the arbitration matter was Barnes & Thornburg. Compl. at 7; Def.'s Reply Br. at 1.

By entry dated Friday, December 8, 2006, Magistrate Judge Lawrence reluctantly granted Emmis' motion to continue a settlement conference that was scheduled by order dated September 29, 2006, for Monday, December 11, 2006. Entry on Mot. to Continue, Dec. 8, 2006. Emmis made the request based on the fact that it had retained new counsel in the case "earlier in the week" and its new attorneys needed to familiarize themselves with the case before they could effectively participate in a settlement conference. *Id.* The new attorneys were from Ice Miller. Notice of Appearance by G. Daniel Kelly, Jr., Dec. 8, 2006; Notice of Appearance by Scott D. Matthews, Dec. 8, 2006.

Berger attests [2] that as soon as he found out that Ice Miller had made an appearance on behalf of Emmis in this suit, he notified Ice Miller of his objection to its representation against his interests and directed CBS to object on his behalf in this suit. Berger Aff. ¶ 9 & Exh. A, Letter,

---

**2.** Emmis has moved to strike paragraph 10 of Berger's affidavit because the matters set forth therein are irrelevant. The Court disagrees with Emmis that the paragraph should be stricken for any reason as it sets forth matters within Berger's personal knowledge, and supports his motion to intervene in this cause. Emmis' Second Motion to Strike is **DENIED.**

Re: *Emmis Operating Co. v. CBS Radio Inc.*, Dec. 28, 2006 ("Berger Letter").

Emmis responded to Berger, through counsel, by letter dated January 3, 2007. *Id.* ¶ 9 & Exh. B, Letter, Re: *Emmis Operating Co. v. CBS Radio Inc.*, Jan. 3, 2007 ("Ice Miller Letter"). Ice Miller stated that there was no conflict of interest in this suit because it did not represent Emmis with respect to any claim against Berger. Ice Miller Letter, at 1. Nor would there be a reasonable inference that Ice Miller received confidential information from Berger that would be relevant to the issues in this suit. *Id.* Moreover, Ice Miller asserted that Berger's breach of the employment agreement in the instant litigation was a "given." *Id.* And, in any event, CBS would provide reimbursements to Berger if he were found liable to Emmis in the arbitration proceeding, in which proceeding Ice Miller did not represent Emmis. *Id.*

On January 11, 2007, CBS filed the instant motion. On February 16, 2007, Berger moved to intervene for the purpose of joining in CBS' motion to disqualify, which the Court granted on February 21, 2007.

The Court notes that the arbitration proceeding against Berger has been stayed pending the outcome of this suit. Ice Miller Letter, at 2; Barrett Aff. ¶ 12.

## II. DISCUSSION

### A. STANDING

Emmis contends that CBS lacks standing to bring a motion to disqualify because Ice Miller has never represented CBS in any matter and because Emmis does not have a claim against Berger in the instant suit. Moreover, Emmis argues that a finding against CBS in this suit cannot materially effect Berger's interests because CBS has agreed to indemnify Berger if he is found to have breached the employment agreement.

CBS and Berger argue that CBS has standing on its own, and that Berger has standing to assert his own interests, which are closely aligned with those of CBS. CBS contends that a third party's standing to bring a motion to disqualify has been decided favorably in the First, Fourth and Fifth Circuit Courts of Appeals. CBS Reply Br. at 5–6 (citing *Kevlik v. Goldstein*, 724 F.2d 844, 847–48 (1st Cir.1984); *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671, 673 (5th Cir.1977); *United States v. Clarkson*, 567 F.2d 270, 271 n. 1 (4th Cir.1977)).

Although the Court did not find any Seventh Circuit cases on point in the civil context, the Seventh Circuit has addressed a similar issue in a criminal case. *U.S. v. White*, 743 F.2d 488 (7th Cir.1984). In *White*, the court addressed the government's standing to bring an appeal of the denial of a motion to disqualify a defendant's counsel because that counsel, in a prior matter, had represented a government witness in the *White* case. *Id.* at 494. The government argued that the district court had erred in not disqualifying the defendant's attorney because it had failed to protect the witness' attorney-client privilege with that attorney. *Id.* The Seventh Circuit opined that the government "lack[ed] standing to bring an appeal based on the attorney-client privilege of [the witness]." *Id.* The Seventh Circuit noted, however, that the government was not at fault for bringing to the attention of the trial court a possible ethical problem in the case. *Id.* The Seventh Circuit also mentioned that it might have been a different outcome if the witness had asserted the issue himself. *Id.*

The Second Circuit has also addressed the issue in a criminal case. *U.S. v. Rogers*, 9 F.3d 1025 (2d Cir.1993), *cert. denied*, 513 U.S. 827, 115 S.Ct. 95, 130 L.Ed.2d 45 (1994). In *Rogers*, the Second Circuit

found that a third party who is in privy with the aggrieved client has standing to bring a motion to disqualify counsel. *Id.* at 1031. The *Rogers* court reasoned that the aggrieved client's joinder in the motion to disqualify "was sufficient to assert the adverse nature of his interest in the confidences he may have disclosed to" the attorney to be disqualified, "and presented the district judge 'with a plain duty to act' on the disqualification motion." *Id.* (quoting *In re Yarn Processing Patent Validity Litig.,* 530 F.2d 83, 88 (5th Cir.1976)).

■ The Court notes that the considerations in a criminal case are somewhat different because of the defendant's constitutional right to counsel, and his constitutional right to have counsel free from conflicts of interest. *See Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). The right to choose a particular counsel is not at issue in a civil case. *See Int'l Bus. Machs. Corp. v. Levin,* 579 F.2d 271, 283 (3rd Cir.1978). However, the criminal cases do point to the type of analysis that is required to determine whether CBS and Berger have standing to challenge Ice Miller's representation of Emmis in the instant matter. Such analysis would seem to require that the party bringing the motion show prejudice to the proceedings and, in CBS's case, privy with the aggrieved client.

A similar construct has been followed in two unpublished cases in the Northern District of Illinois. In those cases, the court decided that to have standing to bring a disqualification motion, the moving party must show evidence "clearly calling into question the fair or efficient administration of justice." *Tizes v. Curico,* No. 94 C 7657, 1997 WL 116797, at *2 (N.D.Ill. Mar.12, 1997) (citing *In re Sandahl,* 980 F.2d 1118, 1121 (7th Cir.1992); *Thomas & Betts Corp. v. Panduit Corp.,* 93 C 4017, 1995 WL 319635, at *2 & n. 3 (N.D.Ill. May 25, 1995)) (referencing in note 3 a

comment to Rule of Professional Conduct 1.7, which allows for opposing counsel to raise a conflict of interest that clearly interferes with the fair and efficient administration of justice). Those courts were also concerned with whether or not the aggrieved former client was affected by the allegedly improper representation. *Tizes,* 1997 WL 116797, at *2 (stating that the "proper party is the client or former client, the party the conflict rules are designed to protect"); *Thomas & Betts Corp.,* 1995 WL 319635, at *2 (same).

The First, Fourth and Fifth Circuit Courts of Appeals have addressed the issue and have found standing for a third party. *Kevlik v. Goldstein,* 724 F.2d 844, 847–48 (1st Cir.1984); *United States v. Clarkson,* 567 F.2d 270, 271 n. 1 (4th Cir. 1977); *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.,* 563 F.2d 671, 673 (5th Cir.1977). The First Circuit found standing in the Model Code of Professional Responsibility, Disciplinary Rule 1–103(A), which "requires that an attorney come forward if he has knowledge of an actual or potential violation of a Disciplinary Rule...." *Kevlik,* 724 F.2d at 847. With similar reasoning, the Fourth Circuit stated that the propriety of a lawyer third-party bringing a "motion to disqualify cannot be questioned." *Clarkson,* 567 F.2d at 271 n. 1. The Fourth Circuit stated that "any member of the bar aware of the facts justifying a disqualification of counsel is obligated to call it to the attention of the court." *Id.* (citing *Estates Theatres, Inc. v. Columbia Pictures Indus., Inc.,* 345 F.Supp. 93, 98 (S.D.N.Y.1972)). Finally, in *Brown & Williamson Tobacco Corp.,* the Fifth Circuit stated that a third party could seek disqualification "even though it is not an aggrieved client because its attorneys are authorized to report any ethical violations committed in the case." *Brown & Williamson Tobacco Corp.,* 563 F.2d at 673 (citing *In re Gopman,* 531 F.2d 262,

265–66 (5th Cir.), *rehrg. enbanc denied,* 542 F.2d 575 (5th Cir.1976)).

 There is no question that there is standing under the construct in the First, Fourth and Fifth Circuit Court of Appeals because counsel for CBS would be under a duty to bring to the Court's attention a potential violation of the ethical rules governing practice in its Court. Even under the more stringent standard referenced in *White,* and fully articulated by the Northern District of Illinois, CBS and Berger have shown that Ice Miller's alleged conflict of interest would effect the full and fair administration of this case. Emmis must prove that Berger breached the employment agreement to prove its case against CBS. CBS' interests in making that evidentiary showing is identical to that of Berger, the aggrieved client, who has intervened for the purpose of expressing his own concern with Ice Miller's representation of Emmis on the matter. There is no question that Berger will be a key witness in this case; Emmis listed him first in its initial disclosure of witnesses. Def.'s Exh. 1, Plaintiff Emmis Operation Co.'s Initial Disclosures, ¶ I. It is the Court's view that the conflict between Berger and Ice Miller could effect the fair administration of justice in this case.

 Furthermore, if the Seventh Circuit's dicta in *White* is indeed how the Seventh Circuit would rule in a third-party disqualification case, then Berger's intervention in the case to assert his own concerns over the potential violation of his attorney-client privilege as a key witness triggers this Court's responsibility to inquire into the potential conflict. In that case, the fact that CBS first raised the issue is of no moment.

For these reasons, the Court concludes that CBS and Berger have standing to move for disqualification of Emmis' attorneys.

## B. DISQUALIFICATION OF EMMIS' ATTORNEYS

Turning to the merits of the motion to disqualify, CBS and Berger allege that Ice Miller's representation of Emmis in this case presents a conflict of interest for Ice Miller under Rule 1.9 of the Rules of Professional Conduct for the State of Indiana.[3] More specifically, the movants contend that a substantial relationship exists between the instant litigation, which centers around whether CBS induced Berger to breach the employment agreement, and the subject of Ice Miller's previous representation of Berger's interests in negotiating the terms of the original employment agreement. CBS and Berger assert that the important relevant terms of the employment agreement were not changed by the subsequent 2005 negotiation of the compensation clauses and extension of the term of the agreement. For example, clauses related to non-interference, termination, unjust termination, the obligation of the parties upon termination, the damages recoverable, and an arbitration agreement were all negotiated by Berger with Ice Miller's help and survived the renegotiated terms of the 2005 amendment. The movants also note that the employment agreement does not contain a non-competition clause. CBS and Berger argue that it is reasonable to infer that Ice Miller learned about Berger's view on all of these important issues during its representation of him. Moreover, these very issues are relevant to whether Berger breached the employment agreement, which is an element of Emmis' claim against CBS. Berger asserts that he will have to face, under oath, attorneys from the same firm that

---

**3.** Southern District of Indiana Local Rule 83.5 adopts the Indiana Rules of Professional

Conduct as the governing rules of conduct for those practicing in this Court. L.R. 83.5.

negotiated these terms on his behalf, a situation that both CBS and Berger contend create an appearance of impropriety that the Court should not countenance.

In contrast, Emmis asserts that the focus of the instant case is not on Berger's breach of the employment agreement, rather, the focus here is on what CBS did to convince Berger to leave Emmis shortly after he negotiated an extended term to his employment contract. Emmis contends that no confidential information share by Berger with Ice Miller is relevant to that issue. Moreover, Emmis argues that Berger's interest cannot be harmed by resolution of the instant matter because the arbitration case has been stayed pending the outcome here, and Emmis has agreed to indemnify Berger against any losses arising out of his obligations to Emmis under the employment agreement. In fact, Emmis has stated that Berger's breach of the employment agreement is a "given" in this case.

■■■ The standard for determining whether a conflict of interest exists to justify disqualification of an attorney is governed by the "substantial relationship" test developed by the Seventh Circuit, and based on the American Bar Association ("ABA") Code of Professional Responsibility Canons 4 and 9.[4] *LaSalle Nat'l Bank v. Lake County,* 703 F.2d 252, 255 (7th Cir. 1983). Under the test, the Court must determine " 'whether it could reasonably be said that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation.' " *Id.* (quoting *Cannon v. U.S. Acoustics Corp.,* 398 F.Supp. 209, 223 (N.D.Ill.1975), *aff'd in relevant part and rev'd in part,* 532 F.2d 1118 (7th Cir.1976)). If the Court finds a substantial relationship, then "it is unnec-

essary for the movant to prove that the attorney in question actually received during the course of his former employment confidential information relevant to matters involved in the subsequent representation." *Id.* (citing *Schloetter v. Railoc of Ind., Inc.,* 546 F.2d 706, 710 (7th Cir. 1976)).

■■■ The substantial relationship inquiry requires a three-step analysis. *Id.* The Court must first "make a factual reconstruction of the scope of the prior legal representation." *Id.* Then the Court must determine "whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters." *Id.* at 255–56. Third, the Court must determine "whether that information is relevant to the issues raised in the litigation pending against the former client." *Id.* at 256. Once the Court has determined that a substantial relationship exists, it may "presume that the attorney received confidential information during his prior representation." *Id.* This presumption, however, is rebuttable by clear and effective evidence that the attorney in question had no knowledge of the information, confidences and/or secrets related by the client in the prior representation. *See id.* (citing *Freeman v. Chi. Musical Instr. Co.,* 689 F.2d 715, 723 (7th Cir.1982)); *see also Schiessle v. Stephens,* 717 F.2d 417, 420 (7th Cir.1983). The Seventh Circuit has described disqualification as "a 'drastic measure which courts should hesitate to impose except when absolutely necessary.' " *Schiessle,* 717 F.2d at 420 (quoting *Freeman,* 689 F.2d at 721).

■■■ After reading the parties' briefs and listening to their arguments, the Court concludes that disqualification in this case

---

**4.** The Court notes that ABA Canons 4 and 9 protect the same interests as Indiana Professional Rule of Conduct 1.9.

is absolutely necessary. Despite Emmis' arguments to the contrary, the clauses of the employment contract negotiated by Ice Miller on Berger's behalf are germane to the outcome of the instant matter. Emmis contends that the only clause at issue is the term of the 2005 amendment because that is the only clause Berger breached. However, CBS and Berger dispute that there was any breach under the terms of the employment agreement. To resolve the issue, it seems to the Court, that the entirety of the employment agreement must be considered, including the terms of the original agreement that remained unchanged by the 2005 renegotiation.

In addition, Berger attests that during the negotiations of the original agreement he shared confidential information about the pertinent non-remuneration clauses with Klaper. This is a reasonable inference here given that Klaper spent ten hours on the matter over a three-month period of time. The presence of clauses regarding the rights of the parties to terminate the agreement or upon termination of the agreement and the absence of a non-compete clause also imply that Berger shared confidential information with Klaper about those issues; issues that are relevant to whether or not Berger breached the agreement.

Furthermore, the issue of the breach will be decided conclusively in this case because the arbitration over that issue has been stayed pending resolution of the claims asserted here. There seems to be no dispute that resolution of the breach of contract issue in this case would act as *res judicata* in the arbitration. The Court is not persuaded by Emmis' argument that Berger has no interest in the outcome of this cause because CBS has agreed to indemnify Berger. Emmis has not agreed to arbitrate the issue of the breach and allow that decision to prevail in this case. Rather, Emmis has agreed to litigate the entirety of the issues surrounding the employment contract here. CBS's promises to Berger about indemnification cannot negate Berger's interest in proving he did not breach the employment agreement. Moreover, the Court finds unpersuasive Emmis' argument at the hearing that Berger has no personal interest in preserving his reputation by proving he did not breach the agreement. If the evidence of Berger's employment at two major radio companies is any indication, Berger is a highly regarded financial executive who should be concerned about his reputation for integrity. The Court cannot agree with Emmis that Berger has no stake in the outcome of the issues to be litigated in this case.

Finally, Berger has asserted that he is concerned about his former counsel cross-examining him about the content of the employment agreement because of confidences he shared with counsel during negotiations of the original agreement. Clearly as to the issue of whether a breach of the employment agreement occurred, Berger's interests are adverse to Emmis' and, by association, its lawyer, Ice Miller. The Court agrees with Berger that the issues in this case puts him in the untenable situation of having to face, as an opponent, a party that knows relevant information about his motivations.

For these reasons, the Court concludes that a substantial relationship exists between the subject matter of the prior and present representations that raises a presumption of shared confidential information to create a conflict of interest. Emmis' evidence to demonstrate that Ice Miller had no knowledge of the information, confidences and/or secrets related by Berger in the prior representation is based on its characterization of the breach as a breach of the 2005 renegotiated term only; an argument the Court has rejected. In addition, Emmis argues

that Klaper spent only ten hours over three months on the final negotiations, which Emmis contends is not enough time to have learned anything relevant to Berger's motivations in 2005. However, as already discussed by the Court, the non-compensatory terms of the original employment agreement, terms that spell out the rights and duties of the parties viz-a-viz termination, survived unchanged in 2005. It is those clauses, in addition to the renegotiated term, that likely would have significant bearing on the outcome of this case. There is no evidence to rebut the inference that Klaper, and Ice Miller through him, received confidential information from Berger about the importance of those terms of the agreement.

In the final analysis, the scope of Ice Miller's representation of Berger in the negotiations of his employment agreement with Emmis is closely tied to the issues in the instant case. Berger's own interest and those of CBS, with whom Berger is in privy, in vigorously defending against Emmis' allegation that Berger breached the employment agreement at CBS' urging in this case is clear. Ice Miller has a duty to keep information it learned from Berger in negotiating the employment agreement in confidence that would be breached by its representation of Emmis against Berger's interests and, by close association, against CBS's interests in the instant matter.

## III. *CONCLUSION*

For the foregoing reasons, the Court **GRANTS** defendant's, Motion to Disqualify Counsel. In addition, the Court **DENIES** plaintiff's, Emmis Operating Co., Motion to Dismiss and Second Motion to Strike. Plaintiff shall have fifteen days from the date of this Order to obtain new counsel. The matter shall remain **STAYED** until such counsel has made an appearance.

IT IS SO ORDERED this 30th day of March, 2007.