**UNITED STATES of America, Plaintiff-Appellee,**

v.

**David O'MALLEY, Defendant-Appellant.**

**No. 85–1807.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1985.
Decided March 12, 1986.

Leland Shalgos, Lynch & Shalgos, Chicago, Ill., for defendant-appellant.

Pierre Talbert, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER, CUDAHY, and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

Defendant David O'Malley was convicted by a jury of two counts of extortion and sentenced to ten years imprisonment to be followed by five years probation. Defendant appeals his conviction, claiming that the trial judge's disqualification of his original attorney violated his sixth amendment right to the assistance of counsel. We affirm the trial court's ruling.

## I.

A federal grand jury indicted O'Malley on two counts of extortion on April 17, 1984. On May 21, 1984, the government moved to disqualify O'Malley's retained counsel, Leland Shalgos. Shalgos had previously represented John Einoder in two criminal matters, and had been recommended to Einoder by O'Malley. The government asserted that Einoder would be a key witness in its prosecution of O'Malley, and that allowing Shalgos to represent O'Malley would give O'Malley an unfair advantage at trial, violate Einoder's attorney-client privilege, and preclude Shalgos from effectively representing O'Malley. The government's motion for disqualification included an affidavit by Einoder asserting his attorney-client privilege as to confidences he revealed to Shalgos while Shalgos represented him and alleging that some of these confidences concerned O'Malley. Shalgos denied that any conflict of interest existed between his prior representation of Einoder and his representation of O'Malley, arguing that the circumstances of the several cases were unrelated.

The trial judge found that Shalgos's representation of O'Malley in the instant case was improper and ordered him disqualified. In making this determination, the court noted that Shalgos did not deny that his representation of Einoder was suggested by O'Malley or that some of Einoder's confidences involved O'Malley. The trial judge also considered that Einoder had been charged with 55 counts of theft and related offenses in one of the cases in which Shalgos had represented him. The trial judge concluded that it was "fair to infer" from this that Shalgos possessed confidential information, including specific instances of misconduct involving matters of truthfulness, which Shalgos potentially could use to impeach Einoder's credibility as a witness. The trial judge believed that Shalgos might be able to use these confidences in the defense of O'Malley "and, particularly, in cross-examination of Mr. Einoder," to the detriment of Einoder, the government, and the public. TR. 4. Therefore, the trial judge held that, in view of "all of the circumstances present here, and in evaluating the interests of the defendant, the witness, the public and the government, Mr. Shalgos must be disqualified, and I so order." *Id.*

In response to a question by Shalgos as to whether the court was concerned only with whether he could effectively represent O'Malley, the trial judge noted that because it was incumbent on Shalgos to impeach Einoder's credibility, Shalgos was "caught in a dilemma of probably having to violate some confidences instilled in [him] by virtue of a prior representation in discharging [his] obligation to represent O'Malley to the fullest extent possible." TR. 5. The trial judge told Shalgos, however, that he should be disqualified because "if you look simply at the public interests here and the notion of fairness, [I] do not see how I could permit you to vigorously cross examine a former client with whom you had a substantial relationship in an attempt to discredit that former client to the advantage of your present client, based on the information that you and he exchanged." TR. 6.

Shalgos had suggested that an *in camera* hearing to determine the specific confi-

dences Einoder had revealed to Shalgos might be proper. The trial judge disagreed, stating that an *in camera* hearing was not necessary given the information already before the court. TR. 6. The trial judge told Shalgos that the case in which he represented Einoder on the 55 count indictment "was considerable and I have no doubt, frankly, as I sit here that some of those communications would be helpful to you and would be useable by you in cross examining Mr. Einoder." *Id.* The court then ordered O'Malley to obtain different counsel. The case subsequently went to trial with O'Malley's second attorney and a jury found O'Malley guilty as charged. O'Malley now appeals solely on the issue of whether the disqualification of Shalgos violated his sixth amendment right to counsel.

## II.

The government first argues that the disqualification of Shalgos was required by Canons 4 and 9 of the A.B.A. Code of Professional Responsibility.[1] Canon 4 requires an attorney to maintain the confidences of a client revealed in the course of the attorney-client relationship. Canon 9 requires an attorney to avoid even the appearance of impropriety. In support of its argument, the government cites a number of cases from this circuit that upheld an attorney's disqualification based upon the strictures embodied in these two canons of

ethics.[2] These cases, however, are all civil cases and do not involve consideration of the sixth amendment right to the assistance of counsel.[3] A separate line of cases address a criminal defendant's right to the counsel of his choice.

 Unlike a civil defendant, a criminal defendant's choice of his counsel is protected by the sixth amendment. In *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Supreme Court stated: "It is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." 287 U.S. at 53, 53 S.Ct. at 58. This court stated in *United States v. Seale*, 461 F.2d 345 (7th Cir.1972), that the sixth amendment right to the assistance of counsel "certainly means that it is the actual choice of the defendant which deserves consideration." 461 F.2d at 358. *Accord Morris v. Slappy*, 461 U.S. 1, 21–23, 103 S.Ct. 1610, 1621–23, 75 L.Ed.2d 610 (1983) (Brennan, J., concurring) (discussing cases that protect criminal defendant's right to choose his own counsel). As we discuss later, a criminal defendant's right to the counsel of his choice is not absolute. A defendant may, however, waive his right to effective assistance of counsel in order to proceed with the attorney of his choice. *See United States v. Armedo-Sarmiento*, 524 F.2d

1. In *United States v. White*, 743 F.2d 488 (7th Cir.1984), the government argued the same point. While the panel in *White* stated that a *per se* rule of disqualification might be justified when this type of conflict of interests exists, 743 F.2d at 492, the panel never decided this issue because it lacked jurisdiction to review the case. Similarly, our decision in *In the Matter of Klein*, 776 F.2d 628 (7th Cir.1985), noted that the state may enact rules of ethics that may cause disqualifications. *Klein*, 776 F.2d at 633. Again, this statement was dicta and the opinion never reached the issue before us. Moreover, *Klein* stated that unless the government has a "strong reason" for interfering with the defendant's choice of counsel, it may not do so. *Id.*

2. *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269 (7th Cir.1983); *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 255 (7th Cir.1983); *Westinghouse Electric Corp. v. Gulf Oil*, 588 F.2d 221, 224 (7th Cir.1978).

3. We agree with the Second Circuit's reasoning in *United States v. Armedo-Sarmiento*, 524 F.2d 591, 593 (2d Cir.1975), that "[b]ecause these civil cases do not involve the crucial factor of the criminal defendant's Sixth Amendment rights, ... they are not controlling in the present case." The government also relies upon a criminal case, *United States v. Tocco*, 575 F.Supp. 100 (N.D.Ill.1983). In *Tocco*, the district court disqualified the defendant's counsel based solely upon the existence of a conflict between the attorney's obligation to preserve his prior client's confidences and his duty to effectively represent the defendant at trial. 575 F.Supp. at 102. Under our holding in this opinion, however, the district court's determination in *Tocco* that the attorney should have been disqualified was inadequate.

591, 592 (2d Cir.1975); *United States v. Garcia,* 517 F.2d 272, 277 (5th Cir.1975).

■ As to the ethical concerns in cases where the defendant's counsel has previously represented a government witness, the witness's attorney-client privilege may be protected by limiting the examination of the witness. *See, e.g., United States v. Cunningham,* 672 F.2d 1064, 1073 (2d Cir. 1982). Moreover, by limiting the examination of a witness who asserts an attorney-client privilege in such a way that his confidences are fully protected, the court may avoid any appearance of impropriety. Similarly, ensuring that the defendant knowingly and intelligently waives his right to conflict-free counsel will avoid an appearance of impropriety. *See, e.g., Cunningham,* 672 F.2d at 1073. These matters are within the discretion of the trial court. See *United States v. James,* 708 F.2d 40, 45 (2d Cir.1983).

■ Given the weight of the defendant's constitutional right to the counsel of his choice and the trial court's ability to protect the attorney-client privilege and prevent the appearance of impropriety, we refuse to apply to a criminal case the holdings in the civil cases cited above by the government. We also decline to adopt a *per se* rule of disqualification based on Canons 4 and 9 of the A.B.A. Code of Professional Responsibility when an actual conflict of interests exists. We agree with the Second Circuit that the decision to disqualify an attorney in a criminal case requires an evaluation of the interests of the defendant, the government, the witness and the public in view of the circumstances of each particular case. *See United States v. James,* 708 F.2d 40, 44 (2d Cir.1983); *United States v. Cunningham,* 672 F.2d

1064, 1073 (2d Cir.1982). *Accord United States v. Garcia,* 517 F.2d 272, 273 (5th Cir.1975).[4]

In *James* the Second Circuit first considered the defendant's interest in retaining his preferred counsel and noted that the defendant had been represented by the same attorneys "for a significant number of years." 708 F.2d at 44–45. The *James* court then considered the interests of the government witness who, like Einoder in this case, was formerly represented by defendant's attorneys. The court found it significant that the witness, through his own attorney, filed a separate motion to disqualify the defendant's attorneys. 708 F.2d at 45. The *James* court viewed this as an indication that the witness believed the risk of intrusion into his attorney-client privilege to be substantial. *Id.* The court then independently examined this risk, considering the duration of and the subject matter covered by the attorneys' prior representation of the witness. The *James* court held that the district court's finding that it was "very likely" that the attorneys "were privy to confidential communications from [the witness]" was not clearly erroneous. *Id.* The court then stated that "[t]his circumstance in itself strongly suggests the granting of the disqualification motion," *id.,* citing the following language in *United States v. Ostrer,* 597 F.2d 337, 339–40 (2d Cir.1979):

[D]isqualification motions should be granted where the attorney in question is potentially in a position to use privileged information obtained during prior representation of the movant.... Disqualification of counsel in such cases is rooted in notions of fundamental fairness; allowing an attorney to represent a client in a situation where he may use informa-

4. We noted in *White* that the Second Circuit's view is contrary to the position adopted by the Third Circuit in *United States v. Provenzano,* 620 F.2d 985 (3rd Cir.1980), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1981). In *Provenzano,* the Third Circuit held that the defendant's attorney was properly disqualified because he "could not effectively cross-examine his former client ...—now an important prosecution witness—without intruding into matters

protected by the attorney-client privilege." 620 F.2d at 1005 (quoting *United States v. Dolan,* 570 F.2d 1177, 1184 (3rd Cir.1978)). The Third Circuit held that the district court properly refused to accept the defendant's waiver of his right to the effective assistance of counsel based on its " 'supervisory authority over members of the bar to enforce the ethical standard requiring an attorney to decline multiple representation.' " *Id.*

tion obtained in the course of former representation of the client's adversary gives the client an 'unfair advantage.' *James,* 708 F.2d at 45.

Third, the *James* court examined the relationship between the prior representation and the case before the court and considered whether the trial court could have adequately protected the attorney-client privilege by restricting the attorneys' examination of their former client. Based on the extent of the attorneys' prior representation of the witness, the *James* court held that the trial court was not clearly erroneous in finding that the relationship between the prior representation and the case at bar was "substantial." 708 F.2d at 45. The *James* court then looked to its prior decision in *Cunningham* to determine whether the trial court could have protected the witness's privilege despite this substantial relationship. The *Cunningham* court held that disqualification was not required in order to protect the witness's confidences because, among other factors, the attorney's prior representation of the witness in that case was "quite limited," the factual bases for any cross-examination of the witness "were aired on the public record during the [previous] trial of [the witness]," and the defendant's attorney agreed to limit his examination of the witness to matters disclosed in that public record. 672 F.2d at 1073.

The attorneys in *James,* however, only offered to restrict their examination to matters they had discovered through "any independent source." 708 F.2d at 45. As to this proposed restriction, the *James* court stated that

[t]here is, in theory, no vice in the proposed questioning of a former client that springs from sources independent of the client. But, as a practical matter, when sources other than matters of public record are cited, they are substantially more difficult to verify—especially where, as here, counsel may well have received confidential information from the witness on a wide variety of matters over a long period of time—and the

court's ability to protect the witness's privilege is proportionately weakened.

*Id.* The court further noted that this danger was "highlighted by the nature of the questioning that can be anticipated." *Id.* In *James,* the defendants proposed to rely on entrapment as their theory of defense, relying primarily on their long relationship with the witness's drug-selling operation. The government proposed to rely on the same relationship to show that they were predisposed to commit the crimes with which they were charged. The defendant's attorneys had previously represented the witness in a trial for several violations of narcotics laws. Thus, the district court anticipated questioning at trial which would involve matters the attorneys had discussed with the witness in the course of their attorney-client relationship. The *James* court therefore held that "the district court's conclusion that the interests of ... the former client ... cannot be adequately safeguarded was not an abuse of discretion." *Id.*

Finally, the *James* court stated that the findings

that the present issues are substantially related to the subject matter of the past representation, and that defense counsel quite likely have received confidential information from the witness, together with the court's conclusion that the witness's interests cannot adequately be safeguarded by the court, have a serious impact on the interests of the government and of the public. The government has an interest in protecting its witnesses from tactics that are unfair; the public's interest in having trials conducted fairly demands no less on behalf of any witness.

*Id.* at 46. After consideration of the various interests of the defendant, the government, the witness and the public, the *James* court concluded that "even the constitutional dimension of a criminal defendant's right to counsel of his choice does not give the defendant the right to take advantage of his preferred attorney's confiden-

tial knowledge gained from prior representation of the witness." *Id.*

### III.

■ We find that the trial court did not abuse its discretion in determining that the balancing of interests in this case required Shalgos's disqualification. On O'Malley's side of the balance is the fact that he has been represented by Shalgos since 1977 in a number of matters and, as his response to the government's motion at trial states, he "has a tremendous trust and confidence in [Shalgos]." As to the interests of Einoder, O'Malley asserts that Einoder "did not join in the government's motion for disqualification." While it is true that Einoder did not file a separate motion of his own, Einoder did swear out an affidavit in which he outlined the circumstances of his prior representation by Shalgos, stated his status as a witness in O'Malley's trial, and asserted his attorney-client privilege as to confidences he revealed to Shalgos, requesting that this information not be "utilized in any way." This affidavit was attached to the government's motion to disqualify and its averments were referred to in the motion. Because of the nature of these averments and their incorporation into the motion, we do not believe that it is strictly accurate to say that Einoder did not join in the government's motion. Moreover, it is not apparent that Einoder was represented by his own counsel at any time relevant to this case, as was the witness in *James* whose attorney advised him to file a separate motion of his own. At any rate, the affidavit alone makes it clear that Einoder viewed the risk of an intrusion upon his attorney-client privilege as substantial, which was the true focus of the inquiry in both *James* and *Cunningham.*

The trial court independently examined this risk, considering the extent of Shalgos's prior representation of Einoder and its relation to O'Malley's case. The trial court first noted that it was O'Malley who initially recommended Shalgos to Einoder, and that in his response to the government's motion to disqualify, Shalgos did not deny that Einoder revealed confidences to him concerning O'Malley. The trial court also noted that Shalgos represented Einoder on a 55 count indictment for theft and related charges. Einoder eventually pleaded guilty pursuant to a plea agreement negotiated by Shalgos to some of these charges and the rest were dropped. Shalgos also represented Einoder on a misdemeanor gun violation and in an unrelated civil case. The trial judge found that given the breadth of the charges in the theft case "it is fair to infer and conclude" that Shalgos possessed information with potential impeachment value which he gained through confidential communications with Einoder. TR. 2–3. In view of the facts, we do not find that this conclusion by the trial court was clearly erroneous.

The trial court had noted that Einoder's credibility was likely to be critical at trial because he was to be "one of two major witnesses against O'Malley." TR. 2. As O'Malley's attorney, Shalgos would thus be required to impeach Einoder's credibility at trial. Because this impeachment could be accomplished by eliciting specific instances of misconduct involving matters of truthfulness, and because the trial court found that it was likely that Shalgos gained knowledge of such instances involving Einoder through their attorney-client relationship, the trial court found that Shalgos's prior representation of Einoder was relevant to "the issues and determinations presented in the instant case. There is a relationship between the two cases." TR. 4. We do not believe that this finding was clearly erroneous.

The trial judge cited the language in *James* referring to "notions of fundamental fairness" and "unfair advantage" at trial, concluding that "in evaluating the interests of the defendant, the witness, the public and the government, Mr. Shalgos must be disqualified." TR. 4. The trial court then expressed concern that Shalgos would not be able to fulfill his duty to vigorously and effectively represent O'Malley while at the same time preserving the confidences revealed to him by Einoder. When Shalgos asked if his ability to effec-

tively represent O'Malley was the "only problem," the trial judge responded that it was not; the trial judge stated that he had been disqualified because he was given confidences that he might be able to use at trial to the detriment of Einoder, the government, and the public. At no time did Shalgos suggest any restriction which would limit his examination of Einoder in a way that would protect these other interests. Given the problem of verifying whether Shalgos gained knowledge of any particular instance of misconduct by Einoder that might be used at trial from an "independent source" or through his representation of Einoder, we do not think it is likely that any prophylactic measure would have adequately protected Einoder's attorney-client privilege. We hold that, in view of all these circumstances, the trial court did not abuse its discretion in disqualifying Shalgos.

O'Malley contends that the district court's determination was inadequate because the court did not hold an *in camera* hearing to determine whether Shalgos actually possessed information by virtue of his prior representation of Einoder which would be useful at O'Malley's trial. Shalgos denies that his prior representation of Einoder has any relation whatsoever to the government's case against O'Malley and argues that the trial judge could not have validly determined otherwise without holding some sort of hearing to elicit the specific confidences which relate to O'Malley's trial.

In support of this contention, O'Malley relies heavily on this court's opinion in *United States v. White,* 743 F.2d 488 (7th Cir.1984). In *White,* the trial judge held four evidentiary hearings during which he reviewed documentary evidence and heard testimony from the government witness and the defendants before ruling on the government's motion to disqualify the defendants' counsel. The trial judge then denied the motion, finding that the defendants knowingly and intelligently waived their right to conflict-free counsel and that he could shape the examination of the witness in such a way that the witness's attor-

ney-client privilege would be protected. This court praised the "great sensitivity to the rights of the defendants" displayed by the trial judge. 743 F.2d at 492. The *White* court never decided the issue of whether these hearings were required, however, because it then ruled that it lacked jurisdiction to review the case. *Id.* The court's discussion was meant "simply to illustrate the nature of a conflict that seems to be recurring in great frequency." *Id.*

While an *in limine* hearing of the type O'Malley suggests may be advisable in some cases, we do not believe that such hearings are constitutionally required in all cases. In *James* and *Cunningham* neither trial court thought it necessary to elicit the specific confidences previously revealed by the witness to the defendant's attorney in order to show a relationship with the defendant's case. Rather, each trial judge sought to determine only whether confidences useful to the defendant could potentially have been revealed during the attorney's prior representation of the witness. This potential was determined by examining the nature of the prior representation and the probable nature of the examination of the former client at the defendant's trial. These were precisely the factors considered by the district court in this case and, as we stated above, we do not believe that its findings were clearly erroneous. In this case, we hold that the district court's level of inquiry was sufficient to allow the court to properly balance the interests involved and, in particular, to adequately protect O'Malley's right to the counsel of his choice.

Finally, O'Malley contends that any information Einoder revealed to Shalgos during the course of their attorney-client relationship was not privileged because Einoder began cooperating with the F.B.I. within two months after the arrest which led to the 55 count indictment, and allegedly revealed the same information to the F.B.I. that he confided in Shalgos. O'Malley contends that this destroyed the

confidentiality of Einoder's communications with Shalgos, and that therefore the information is not privileged. In *James*, the defendants also argued that the witness waived his attorney-client privilege by making disclosures to the government. The Second Circuit held that "in so far as questioning of the client is concerned '[t]he privilege attaches not to the information but to the communication of the information.'" 708 F.2d at 44 n. 3 (quoting *United States v. Cunningham*, 672 F.2d at 1073 n. 8). In other words, a client does not waive his attorney-client privilege "merely by disclosing a subject which he had discussed with his attorney." J. WEINSTEIN, M. BERGER, WEINSTEIN'S EVIDENCE Advisory Committee's Note to Standard 511 (1984). In order to waive the privilege, the client must disclose the communication with the attorney itself. *Id. Accord* McCORMICK, EVIDENCE § 93 (2d ed. 1972); 8 WIGMORE, EVIDENCE § 2327 (McNaughton rev.1961). O'Malley alleges only that Einoder discussed the same information with Shalgos and the F.B.I., not that Einoder disclosed his communications with Shalgos to the F.B.I. Moreover, the fact that Einoder was cooperating with the F.B.I. does not by itself suggest that he disclosed any privileged communications. *See James*, 708 F.2d at 44 n. 3. Therefore, Einoder has not waived his privilege as to his communications with Shalgos in the course of their attorney-client relationship.

For the reasons stated above, the order disqualifying Shalgos as O'Malley's counsel is AFFIRMED.