**UNITED STATES of America, Plaintiff,**

v.

**Marion RING and Samuel Wood, Defendants.**

No. 94–30023.

United States District Court,
C.D. Illinois,
Springfield Division.

Feb. 16, 1995.

Colin S. Bruce, Asst. U.S. Atty., Springfield, IL, for plaintiff.

Ray Fehrenbacher, Olney, IL, Gregory K. Harris, Thomas Schanzle–Haskins, Springfield, IL, for defendants.

### OPINION

RICHARD MILLS, District Judge:

The difficult issue of attorney disqualification.

The Government asks the Court to reconsider its denial of the Government's Motion to Disqualify Defense Counsel Gregory K. Harris and all members of his law firm of Giffin, Winning, Cohen and Bodewes, P.C.

The Government contends that because Attorney Harris previously represented a potential government witness—James Goss—it is impossible for him to adequately represent Defendant Wood without undermining the integrity of the trial process. Attorney Harris responds that Samuel Wood is willing to waive his right to conflict-free counsel and that reasonable limitations on the cross examination of James Goss can protect all the implicated interests.

On November 4, 1994, the Court agreed with the Defendant. Now, the Government

and counsel for Goss put forth additional evidence and ask for reconsideration.

## I. BACKGROUND

### A. *The Indictment*

On August 25, 1994, an indictment was returned against Marion Ring and Samuel Wood charging twenty-one counts of mail fraud and one count of forfeiture. On November 16, 1994, the Grand Jury returned a superseding indictment adding one violation each of 18 U.S.C. § 1956 and § 1957.

The indictment alleges that Defendant Ring managed the corporate operations and finances of the Reserve Oil Corporation (Reserve). According to the indictment, Reserve created a limited partnership known as Bellair Limited Partnership to purchase an oil field in Crawford County, Illinois. The indictment alleges that Defendant Wood induced potential investors in and around the Springfield area to purchase shares in the partnership. According to the indictment, Defendants Ring and Wood made false and fraudulent representations to the investors and improperly received commissions paid from investor funds.

### B. *James Goss*

James Goss, a retired FBI agent, served as President of Reserve from 1985 until 1990. He has not been charged with any criminal misconduct. According to the Government, however, criminal charges remain a possibility. Moreover, the Government plans to call Goss as a material witness.[1]

Counsel for Defendant Wood, Attorney Harris, previously represented Goss when Goss testified before the Grand Jury investigating the present case. Goss also worked as an investigator for Attorney Harris' firm on unrelated matters.

### C. *Proceedings Prior To The Indictment*
#### 1. Civil Case

The first legal action alleging that Reserve and those associated with it fraudulently induced investors was a civil suit filed against Reserve, James Goss, Marion Ring, Samuel Wood, and Ronald Reguly on March 19, 1991, in Sangamon County, Illinois. No attorneys from Giffin, Winning, Cohen & Bodewes were or are involved in the civil action. In the civil action, James Goss gave a deposition on January 6, 1993.

During the deposition, Goss was specifically asked about Defendant Wood's involvement with Reserve. As they relate to the current criminal action, relevant questions included: (1) Did Goss know "they [Wood and Reguly] were assisting Mr. Ring in, to acquire investors?"; (2) Was Goss "aware at some point that they [Wood and Reguly] were receiving shares at a discounted price in fields offered by Reserve?"; (3) Did Goss know "investors were told that Wood and Reguly were receiving these discounts?"; (4) Was Goss ever "present when Wood or Reguly talked to any of the Plaintiffs" or "potential investors"; and (5) Did Goss ever talk "to Mr. Wood or Reguly about the problem [investor complaints] as it developed?". Goss answered all the above questions in a manner favorable to Defendant Wood.

#### 2. The Grand Jury

On September 11, 1993, a little more than a year before the first indictment, Goss retained Attorney Harris to represent him.[2] Thereafter, on December 1, 1993, two Illinois Security Department Investigators interviewed Goss with Attorney Harris present. After the interview, a memorandum was prepared. Subsequently, in a letter to the agents, Goss made numerous changes to his attributed statements.

Regardless as to whether the original or subsequently changed document is more accurate, Goss' answers to questions about Defendant Wood are generally consistent with

---

**1.** Counsel for Mr. Goss, Attorney Jon Gray Noll, however, stated in open court that he has advised his client not to testify without immunity.

**2.** How long the attorney-client relationship lasted is in dispute. Attorney Harris maintains that

it ended immediately after Goss testified before the Grand Jury on May 18, 1994. Conversely, Goss does not think it had ended until late October 1994.

his earlier deposition testimony and are favorable to Defendant Wood in both versions.

### 3. Assistant United States Attorney Bruce's Letter

On May 11, 1994, Assistant United States Attorney Colin Bruce wrote a letter to Attorney Harris. In the letter, AUSA Bruce confirms an earlier conversation with Attorney Harris in which he apparently stated that Goss was neither a target nor a subject of the investigation. Moreover, in the letter AUSA Bruce also states that based on the information contained in the interview memorandum: "I do not believe at this time a truthful answer to any question posed [by the Grand Jury] would tend to incriminate your client."

### 4. Grand Jury

On December 1, 1993, Goss testified before the Grand Jury. Immediately after his testimony, Attorney Harris debriefed him. The Court has reviewed the transcript of Goss' testimony *in camera.*

### 5. Attorney Harris' Representation of Defendant Wood

Defendant Wood first approached Attorney Harris about the possibility of representing him sometime in early spring of 1994. According to Attorney Harris, he did not agree to represent Defendant Wood until after both Goss and Wood consented and until after he received AUSA Bruce's letter dated May 11, 1994.[3] In other words, according to Attorney Harris, he did not agree to represent Defendant Wood until after he reasonably believed there was no conflict and until after both clients had consented. *See* Illinois Rule of Professional Conduct 1.7.

---

3. Goss denies that he ever gave consent. In any case, a written consent agreement was not created. Attorney Harris, however, does have a billing statement which supports his contention that he talked to Goss about the possibility of representing Defendant Wood. Goss denies that such a conversation ever occurred.

4. The cross examination was to be limited in two respects. First, an attorney other than Attorney Harris would actually ask the questions. Second, and more importantly, the scope of the cross examination would be limited to matters Goss had previously talked about and were recorded in his prior civil deposition, Grand Jury testimony, and if the Jencks Act allowed, the

Nevertheless, it is not in dispute that Attorney Harris represented both Goss and Wood from May 11, 1994, to at least May 18, 1994.

### D. *Proceedings After Indictment*

On October 5, 1994, the Government filed a motion to disqualify Attorney Harris. On October 31, 1994, the Court held an evidentiary hearing. At the hearing, the Court heard from all the attorneys—including counsel for Goss—and from both Goss and Defendant Wood. Because of the nature of the proceedings, much of the testimony was given *ex parte.* Following the hearing, on November 4, 1994, the Court issued a written Order denying the Government's motion to disqualify and further established limitations on the potential cross examination of Goss.[4]

Thereafter, the Government filed a motion for reconsideration. On December 19, 1994, and January 31, 1995, additional evidentiary hearings were conducted. During the hearings, all interested parties were given an opportunity to address alleged violations of the ethical rules. The alleged ethical violations became apparent after Goss submitted an affidavit in support of the Government's motion for reconsideration.[5] At the hearings, the Court also received new evidence on the disqualification issue.

Specifically, the Government contends that it now knows that Goss possesses incriminating information about Defendant Wood that was not previously revealed in the civil case, during his appearance before the Grand Jury, or when he was interviewed by the Illinois Securities Department agents.

---

interview memorandum. *See United States v. Cunningham,* 672 F.2d 1064, 1073 (2nd Cir. 1982).

5. Subsequent to the affidavit, Counsel for Goss deleted the most serious allegation raised in the affidavit—that Attorney Harris had not testified truthfully at the October 31, 1994, hearing. Nevertheless, because of the potential seriousness of the allegations, Attorney Harris and counsel for Goss were given an opportunity to fully explain the facts surrounding the prior representation and the alleged misconduct. At the hearings—although certain factual matters are still disputed—Attorney Harris explained his actions to the satisfaction of the Court.

Moreover, after the Court's November 4, 1994 Order, Defendant Wood's Co–Defendant, Marion Ring, pled guilty and agreed to cooperate with the Government. This is significant because the Government represents to the Court that if he testifies, Goss will corroborate information provided by Defendant Ring that is incriminating to Defendant Wood. Significantly, Attorney Noll, counsel for Goss, verifies the Government's representation.

## II. ANALYSIS

### A. *The Legal Standard*

Judge Glasser of the Eastern District of New York very capably summarized a district court's obligation when confronted with a disqualification motion: "[t]his court is keenly aware of its obligation to balance [the defendant's] right to counsel against the integrity of the trial process, to consider alternatives less drastic than disqualification, and to make specific findings where disqualification is compelled by potential conflict." *United States v. Gotti,* 782 F.Supp. 737, 742 (E.D.N.Y.1992), *affirmed,* 6 F.3d 924 (2nd Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994).

### 1. *Wheat v. United States*

■ In 1988, the Supreme Court made it clear that a district court must recognize a presumption in favor of defendant's counsel of choice. *Wheat v. United States,* 486 U.S. 153, 164, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988). The presumption, however, can be overcome by a sufficient showing of potential or actual conflict. *Id.* A district court must weigh the defendant's right under the Sixth Amendment to an attorney of his choice with the essential purpose underlying the Sixth Amendment—an effective advocate for each criminal defendant. *Id.* at 159, 108 S.Ct. at 1697.

According to the Government, *Wheat* effectively overrules previous Seventh Circuit law, most notably *United States v. O'Malley,* 786 F.2d 786 (7th Cir.1986), governing the determination of when a court should disqualify defense counsel who previously represented a government witness. The Government maintains that *Wheat* dictates that a court must disqualify all defense attorneys who previously represented government witnesses if there is an actual or potential conflict of interest deriving from a prior representation of the witness in a matter significantly related to the current representation of the defendant.

The Court disagrees.

In *Wheat,* the defense attorney in question wanted to represent three indicted defendants charged with conspiracy to possess and distribute marijuana. All three defendants signed valid waivers. *Wheat,* 486 U.S. at 157, 108 S.Ct. at 1695. Despite the waivers, the Supreme Court upheld the trial court's finding that the conflict was severe enough to overcome the presumption in favor of waiver. Thus, *Wheat* stands for the proposition that a district court judge may overcome the presumption of allowing a defendant to waive his right to conflict-free counsel when there is a demonstration of an actual conflict or a showing of a serious potential for a conflict. *Id.* at 164, 108 S.Ct. at 1699.

The presence of a conflict can overcome the presumption in favor of waiver because a trial court must consider the "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S.Ct. at 1697. This was especially true in *Wheat* because the only interests at stake were the defendants' choice of counsel, fairness to the government, and the integrity of the trial process.

The Supreme Court in *Wheat,* however, did not draw a bright line. In fact, the Supreme Court made it clear that there is no automatic disqualification rule and even cases with similar facts to the ones at issue in *Wheat* could be decided differently. According to the Court, "[o]ther district courts may have reached differing or opposite conclusions with equal justification, but that does not mean that one conclusion was 'right' and the other 'wrong.'" *Wheat,* 486 U.S. at 164, 108 S.Ct. at 1700. Therefore, what *Wheat* ultimately stands for is the proposition that a district court faced with a conflict problem has the obligation to evaluate the facts and

circumstances of each case and balance the interests involved. *Id.*

### 2. *United States v. O'Malley*

In *United States v. O'Malley*, 786 F.2d 786 (7th Cir.1986), the Seventh Circuit discussed the factors to be considered by a district court when determining whether a defense counsel should be disqualified because of previous representation of a government witness. According to the Seventh Circuit, the district court must evaluate "the interests of the defendant, the government, the witness and the public in view of the circumstances of each particular case." *Id.* at 790. Therefore *O'Malley*, although decided two years prior to *Wheat*, is in no way inconsistent with *Wheat* and it is binding authority on this Court.

### 3. *United States v. Levy*

In a recent decision, the Second Circuit established a dual "obligation" analysis that a district court should use "when the specter of conflicts of interest arises." *United States v. Levy*, 25 F.3d 146, 153 (2nd Cir.1994). The framework used in *Levy* is compatible with the Supreme Court's holding in *Wheat* and the Seventh Circuit's approach in *O'Malley*.

According to the Second Circuit in *Levy*, first a district court should conduct an "inquiry" into the possibility of a conflict of interest. *Levy*, 25 F.3d at 153. After determining the nature and scope of the conflict, a district court then has a "disqualification/waiver" obligation. *Id.* Accordingly, "[i]f the court discovers that the attorney suffers from a severe conflict—such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation—the court is obligated to disqualify the attorney." *Id.*

### B. *The Law Applied to Defendant Wood*

#### 1. The Conflict

■ There is a potentially severe conflict of interest in this case. Moreover, the Court is cognizant of Chief Justice Rehnquist's warning that "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict." *Wheat v. United States*, 486 U.S. 153, 162, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988). Specifically, Attorney Harris possesses privileged information that he acquired from Goss and the Government intends to call Goss as a witness.

Furthermore, Goss is potentially a very important witness. After all, Goss was President of Reserve and either knows or might know a number of significant facts that could impact on Defendant Wood's defense. Moreover, the Government now asserts that Goss will testify adversely to Defendant Wood and corroborate potentially damaging testimony given by Co–Defendant Ring. Thus, Attorney Harris is faced with an actual conflict of interest if he cross examines Goss. *See* Illinois Rule of Professional Conduct 1.9.

#### 2. Waiver

Defendant Wood has made a valid waiver. He has submitted two affidavits stating his desire to have Attorney Harris continue. Moreover, Attorney Harris fully explained the situation and the Court questioned Defendant Wood in open court. Additionally, at the Court's request, Defendant Wood sought the advice of a second attorney. Thus, there is no question that Defendant Wood is making a knowing waiver of his right to conflict-free counsel. *See United States v. Flores*, 5 F.3d 1070, 1078 (7th Cir.1993).

#### 3. Acceptance of Waiver

A knowing waiver, however, does not solve the problem. The Court still must balance all four of the implicated interests—those of the *defendant*, the *witness*, the *government*, and the *public*—and then determine if accepting the waiver comports with the interests of justice.

In regard to Defendant Wood's interests—besides his Sixth Amendment right to counsel of choice—it is also important to consider the fact that Attorney Harris has represented him for approximately 18 months and is familiar with the case.[6]

---

**6.** Eighteen months is not an overwhelming length of time, but it is a significant enough amount of time for a close attorney-client relationship to develop. *Cf. United States v. O'Mal-* *ley*, 786 F.2d 786, 792 (7th Cir.1986) (seven-year relationship not long enough to prevent disqualification).

The interests of Goss are readily apparent. He refuses to waive his attorney-client privilege and is totally opposed to Attorney Harris representing Defendant Wood. Thus, the Court has an obligation to protect Goss' privilege.

The Government's interests are also implicated. The Government contends that allowing Attorney Harris to continue as counsel would give Defendant Wood an unfair advantage and create the appearance of impropriety. *See United States v. James,* 708 F.2d 40, 46 (2nd Cir.1983). Specifically, the Government asserts that because Attorney Harris is in possession of information about a government witness that he would otherwise not possess, he has an unfair advantage. Additionally, the Government maintains that Attorney Harris' continued representation of Defendant Wood will taint the appearance of any verdict by the jury.[7]

Finally, the public has an important interest in the integrity of the trial process. Correspondingly, the Court has an affirmative duty to ensure "that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988).

In light of all four of the interests, whether the conflict in this situation can be waived is a close call. Nevertheless, after carefully considering all the evidence—Goss' civil deposition and Grand Jury testimony, the investigation memorandum, the Government's and Attorney Noll's representations that Goss, if he testifies, would testify adversely to Defendant Wood, including corroborating Ring's alleged incriminating testimony, and the fact that Goss was formerly the president of the corporation—the Court finds that Goss' interests are sufficiently adverse to Defendant Wood's interests so that allowing Attorney Harris' continued representation would infringe on Defendant Wood's right to a fair trial and would taint the integrity of

the trial process. *See* Illinois Rule of Professional Conduct 1.9.

In other words, after weighing all of the interests noted in *O'Malley,* the Court finds that the presumption in favor of Defendant Wood retaining counsel of his choice has been overcome.

### 4. Other Alternatives

In so finding that the situation mandates disqualification, the Court has also seriously considered but rejected the possibility of using restrictions less drastic than disqualification. In fact, prior to the new evidence being brought forth by the Government, the Court believed that by restricting the cross examination of Goss all interests could be protected. In light of the new evidence, however, restrictions on the cross examination of Goss might fundamentally affect the fairness. of the trial. In other words, no alternative to disqualification is adequate.

### III. CONCLUSION

Because of the severity of the conflict and the corresponding threat to the integrity and fairness of the trial process, the Court cannot allow Attorney Harris to remain as counsel for Defendant Wood.

*Ergo,* the Government's Motion to Disqualify is now ALLOWED. Defendant Wood is directed to find suitable new counsel within 14 days hereafter.

---

7. The Court is aware of the capability of the Government to "manufacture" a conflict in order to deprive a defendant of his counsel of choice. *Wheat v. United States,* 486 U.S. 153, 163, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1987). However, the Court has no reason whatever to question the motivation of the Government in this case.