UNITED STATES of America, Plaintiff,

v.

Maurice HARMON, Defendant.

Nos. 92 CR 166, 95 CV 5560.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 31, 1996.

Sean Martin, Bennett Kaplan, Duane Deskins and Asst. U.S. Attys., Chicago, Illinois, for Plaintiff.

Jeffrey Ira Gehl, Law Offices of Jeffrey I. Gehl, Chicago, Illinois and Bernard B. Nathan, Chicago, Illinois, for Defendant.

*MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Before the court is defendant Maurice Harmon's ("Harmon") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons that follow, the court finds that Harmon's counsel should

be disqualified and Harmon's motion stricken.

## I. BACKGROUND

In March 1992, Harmon was indicted, along with numerous others in a multi-count indictment, on one count of conspiracy with intent to distribute heroin and cocaine and one count of aggravated assault in aid of racketeering activity. One of Harmon's codefendants was Rufus Sims, the alleged leader of the drug trafficking conspiracy.

While Harmon was in jail prior to his indictment, representatives of the United States Attorney's Office and Drug Enforcement Agency interviewed him. In the interview, Harmon talked about his involvement in the "Rufus Sims drug organization." Harmon said that he sold drugs for Sims from 1985 to 1988, and identified other people who also sold drugs for Sims. (Govt.'s Resp. to Def.'s § 2255 Petition Ex. A.)

In October 1992, Harmon pleaded guilty on the drug trafficking conspiracy count. In the plea hearing, the government told the court that if the case were to proceed to trial, its proof would show that Harmon participated in an extensive narcotics conspiracy with Sims and others, that Sims was the leader of the narcotics organization, that Sims paid Harmon for his role in the organization, and that Sims ordered Harmon and others to inflict serious beatings on members of the conspiracy who stole narcotics or otherwise violated the rules of the organization. (Govt.'s Resp. to Def.'s § 2255 Petition Ex. B at 13–15.) Harmon agreed that all of this was true, and that he was guilty of the conspiracy count. (*Id.* at 15–16.) Accordingly, the court entered a judgment of conviction against Harmon on the conspiracy count.

In July 1993, the court sentenced Harmon to 235 months' imprisonment, which was the lowest end of the sentencing range that the court found applicable to Harmon's case. Harmon appealed his conviction and sentence, both of which the Seventh Circuit Court of Appeals affirmed on June 8, 1995.

In the meantime, Sims fled Illinois for California after the 1992 indictments were returned; he remained a fugitive for two and a half years. Sims eventually was found and returned to Illinois to stand trial. In July 1995, after a six-week trial, a jury convicted Sims of numerous counts of money laundering and structuring financial transactions, but acquitted him of drug trafficking and racketeering charges. On December 6, 1995, this court sentenced Sims to 327 months' imprisonment. Sims immediately appealed his conviction and sentence to the Seventh Circuit. Throughout his trial, at sentencing, and, as far as this court has been informed, on appeal, Sims has been and is represented by attorneys Bernard Nathan and Jeffrey Gehl.

In September 1995, Harmon retained attorneys Nathan and Gehl to represent him. Harmon now is asking this court to vacate, set aside, or correct his sentence. In its response to Harmon's motion to set aside, vacate, or correct his sentence, the government has raised an objection to Harmon's representation by the same attorneys that represent Harmon's codefendant, Sims.

## II. DISCUSSION

### A.

The Sixth Amendment to the Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right ... to have the effective assistance of counsel." U.S. CONST.AM. VI. The Sixth Amendment bestows two corollary rights: the right to choose and be represented by one's preferred counsel; *see Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988); *United States v. Lowry,* 971 F.2d 55, 59 (7th Cir.1992); and the right to be represented by an attorney "with unwavering, undivided loyalty to the defendant." *United States v. Messino,* 852 F.Supp. 652, 654 (N.D.Ill.1994) (citing *Lowry,* 971 F.2d at 59 (citing *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980))).

However, when codefendants want to be represented by the same attorney, these two rights can clash, and the court must step in. *See Lowry,* 971 F.2d at 59. "While 'permitting a single attorney to represent codefendants ... is not per se violative of constitu-

tional guarantees of effective assistance of counsel,' ... a court confronted with and alerted to possible conflicts of interests must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Wheat,* 486 U.S. 153, 159–60, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988) (quoting *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978)).

■ Furthermore, although a defendant may waive his or her right to conflict-free counsel, the trial court still remains obligated to address the situation. The court has a duty "to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Messino,* 852 F.Supp. at 655 (citing *Wheat,* 486 U.S. at 161, 108 S.Ct. at 1698). The court also has an "institutional interest in the rendition of just verdicts in criminal cases," because criminal proceedings must "appear fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S.Ct. at 1698.

Therefore, a trial court faced with a conflict can require separate counsel to represent codefendants in spite of defendants' waivers. This is so even where the conflict has not materialized, but is merely a possibility. As the Supreme Court stated in *Wheat,* "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat,* 486 U.S. at 163, 108 S.Ct. at 1699.

## B.

■ In deciding whether to disqualify a defendant's chosen counsel, the court must evaluate and balance the interests of the defendant, the other client represented by the defendant's counsel, the government, and the court and public based on the circumstances of each particular case. *See United States v. O'Malley,* 786 F.2d 786, 790 (7th Cir.1986).

### 1. *Harmon's interest*

■ Harmon's primary interest is in having the counsel of his choice represent him, and Gehl and Nathan obviously are the counsel of his choice. The court is aware that removing Gehl and Nathan from Harmon's case impinges upon this interest. However, the court does not believe that disqualifying Gehl and Nathan would prejudice Harmon or his challenge to his sentence. "[I]n considering the various factors in a disqualification motion, courts seek to protect long[-]standing attorney-client relationships." *United States v. Alex,* 788 F.Supp. 359, 364 (N.D.Ill.1992). Attorneys Gehl and Nathan have represented Harmon only since September 1995—just a month before Harmon filed the instant motion and four months from the time that the court writes this opinion. Representation for a few months does not amount to a long-standing attorney-client relationship. The short time period during which Gehl and Nathan have represented Harmon lessens the impact of disqualifying Gehl and Nathan as Harmon's attorneys, and makes it unlikely that Harmon will suffer any prejudice by his attorneys' disqualification.

Moreover, Harmon himself has a vital interest in receiving effective assistance of counsel. The court notes that since the genesis of this case, Sims and Harmon have taken diametrically opposed positions about the drug conspiracy and its key players. Sims has denied, and continues to deny, having any major involvement in it. Sims maintained throughout his sentencing proceedings that he had no role in the drug conspiracy, particularly not a leadership role, and likely will take the same position on appeal and in any future post-conviction motions. Harmon, on the other hand, has repeatedly taken the position that he was a member of the narcotics organization run by Sims, and that Sims paid him and gave him orders.

The court notes that if Harmon were to receive the relief that he requests in his section 2255 motion, the court may have to hold an evidentiary hearing or new trial before resentencing Harmon. Harmon presumably will have to testify at these proceedings or call witnesses on his behalf. Thus, Nathan's and Gehl's representation of Harmon may not end with the motion now before the court. The absolute contradiction in Harmon's and Sims' positions raises the

question whether the same counsel can effectively represent Harmon and Sims and maintain their and their client's credibility and their absolute loyalty to each client. The court also is gravely concerned about the use of confidential information provided by one defendant for or against the other defendant, in violation of each defendant's attorney-client privilege.

Harmon argues that Nathan's and Gehl's representation of two codefendants with contradictory positions does not automatically and inevitably lead to a patent conflict of interest. This may be true. However, the court is not omniscient and cannot foresee what conflicts may arise in the future. *Wheat* allows the court to take steps to ensure that a potential conflict does not materialize into an actual one. *Wheat*, 486 U.S. at 163, 108 S.Ct. at 1699. That is what the court is doing here—ensuring that Nathan's and Gehl's dual representation of Harmon and Sims does not erupt into an actual and unconstitutional conflict.

Accordingly, the court finds that it is in Harmon's best interest to disqualify Nathan and Gehl from representing Harmon.

### 2. *Sims' interest*

Nathan and Gehl represented Rufus Sims during his trial and sentencing, and, as far as the court knows, still represent Sims on his appeal from his sentence. This is the type of long-standing attorney-client relationship that the court seeks to protect. *See Alex*, 788 F.Supp. at 364. Nathan and Gehl took up Harmon's cause in September 1995. Neither the government nor Harmon has given the court reason to believe that Sims consented to his attorneys' representation of Harmon. Because Sims also has a right to effective assistance of counsel, and has had a lengthy relationship with Nathan and Gehl that merits protection, the court finds it in Sims' interest to have Nathan and Gehl removed from Harmon's case.

### 3. *Government's interest*

The government has a fundamental interest in showing the public that justice is served and criminal cases are resolved the first time around, and in preserving its resources, both of which are accomplished by the trial court's meting out fair and unassailable decisions. However, defendants are only too willing to challenge the court's decisions under the rubric of ineffective assistance of counsel, and appellate courts are willing to entertain such challenges. *Wheat*, 486 U.S. at 161–62, 108 S.Ct. at 1698. Thus, the government has an interest in ensuring that defendants receive counsel free of a conflict that would make counsel constitutionally ineffective, and thereby provide a basis for challenging the court's decisions.

As the court has noted, without deciding, if the court eventually agrees with Harmon's arguments raised in his section 2255 motion, the court may be required either to hold an evidentiary hearing or to try Harmon, since Harmon disputes many of the facts on which his sentence was based. Either proceeding would require the government to expend money, time, and effort, and potentially, much of each. Allowing Harmon to be represented by counsel laboring under a conflict of interest could provide a basis for a challenge to his sentence. If Harmon succeeded in challenging his evidentiary hearing or trial and resultant new sentence by raising an ineffective assistance claim based on his counsel's conflict of interest, the government would be required to expend substantially more resources to repeat the process.

To remove this risk, then, it is in the government's interest that Gehl and Nathan be disqualified.

### 4. *Court's and public's interests*

The court has a duty to ensure that criminal proceedings "are conducted within the ethical standards of the profession and ... appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S.Ct. at 1698. Thus, the court has a strong interest in ensuring that criminal proceedings not only *are* fair and just, but also *appear* fair and just to the public. The court believes that allowing Nathan and Gehl to represent both Harmon and Sims creates an appearance of a conflict of interest and hurts the integrity of the judicial system.

As the court noted in its discussion of Harmon's interests, Harmon and Sims have taken polar positions about the drug conspiracy. Aside from the dangers to Harmon and Sims of allowing the same counsel to represent both defendants, the court finds that it reflects badly on the already much-maligned

legal and judicial systems to allow the same lawyers to represent codefendants who tell opposing tales. Whether correct or not, the inference is that at least one of the defendants is not telling the truth, which the attorneys realize and condone.

In addition, the public who views the proceedings involving Harmon and Sims may wonder, as the court does, how attorneys representing defendants with contradictory stories and incompatible interests can serve both of their clients effectively and loyally. Even if Nathan and Gehl were able to serve both Harmon and Sims without conflict, their representing both nonetheless may create the perception of conflict.

The court also is concerned about the sharing of confidential information provided by each defendant. Such use of confidential information may or may not actually harm the defendants, but it undoubtedly appears improper. Allowing the same counsel to represent clients who obviously have information about each other and who have antagonistic interests undermines the principles of the attorney-client privilege.

Accordingly, the court's and public's interest in criminal proceedings "that are fair and free from any appearance of impropriety," *Alex*, 788 F.Supp. at 365, require that Gehl and Nathan be disqualified from representing Harmon.

### C.

A balancing of the foregoing interests weighs heavily in favor of disqualifying Nathan and Gehl from representing Harmon. The only interest militating in favor of allowing Nathan and Gehl to represent Harmon is that Harmon chose them to represent him. While this factor is of paramount importance, it is only one factor, and is outweighed by the numerous concerns already set out in this opinion. Furthermore, as the court has noted, the court does not believe that disqualifying Nathan and Gehl will result in any prejudice to Harmon.

The court is cognizant of the fact that the situation before the court is not as egregious as the more typical conflict caused by dual representation of codefendants prior to and during trial. Nonetheless, the court finds that a grave potential for conflict exists. The court believes it wiser to prevent any conflict now, when no prejudice would result to Harmon from doing so, than to allow a potential conflict to ripen into an actual conflict that prejudices Harmon, or Sims, or both, and negatively impacts the government, the court, and the public.

Because the court finds that Nathan and Gehl have been laboring under an unacceptable conflict of interest, whether actual or potential, since they began their representation of Harmon, the court finds that Harmon's motion to set aside, vacate, or correct his sentence should be stricken, so that Harmon may obtain unconflicted counsel to represent him and present such a motion.

### CONCLUSION

For the foregoing reasons, the court disqualifies attorneys Bernard Nathan and Jeffrey Gehl from representing defendant Maurice Harmon, and strikes Harmon's motion to set aside, vacate, or correct his sentence without prejudice to Harmon's right to file a new motion to set aside, vacate, or correct his sentence pursuant to 28 U.S.C. § 2255.