[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In these three cases the plaintiffs allege that they were injured in separate unrelated automobile accidents. Their treating physician is William Lewis, M.D. an orthopedist whom each plaintiff has disclosed as an expert. The defendants in each case are represented by the firm Bai, Pollock Coyne (hereinafter "the firm"). Doctor Lewis is a defendant in a medical malpractice case pending in this court (Burgos v. Lewis, CV97-0345509) brought by a party who treated with Dr. Lewis for injuries to the left shoulder and rotator cuff. In that case Dr. Lewis is represented by the firm.
Each of the plaintiffs has moved to disqualify the firm on the grounds that "a conflict exists between the adversarial nature of the potential cross examination of Dr. Lewis" in these cases and the representation of Dr. Lewis in the medical malpractice case.
In Burgos v. Giannakakos the plaintiff alleges injuries to his right shoulder and complains of cervical radiculopathy.
In Cherry v. Smalls the plaintiff alleges injuries to her cervical spine and right patella.
In Chassagne v. Roberts the plaintiff alleges injuries to her cervical spine, lumbar spine and left knee. CT Page 13941
The defendants have filed memoranda in opposition to the motions. Oral argument was heard but neither party requested an evidentiary hearing so none was held.
In a nut shell, these plaintiffs are worried that the firm has acquired confidential information from and about Dr. Lewis which is unavailable to the plaintiffs prior to trial by reason of the attorney-client privilege between the firm and Dr. Lewis. In turn they are concerned that this information will be used to impeach Dr. Lewis's credibility and his proper adherence to the appropriate standard of care.
 I.
The defendants raise as a threshold issue the plaintiffs' lack of standing to move for disqualification. While standing is ordinarily essential to the invocation of subject matter jurisdiction, "the fundamental aspect of standing. . . [is that] it focuses on the party seeking to get his complaint before [the] court and not on the issues he wishes to have adjudicated.'Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947
[1968]." Hartford Kosher Caterers, Inc. v. Gazda, 165 Conn. 478,485, 338 A. 2nd 497 (1973). "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded." Mystic Marine Aquarium,Inc. v. Gill, 175 Conn. 483, 491, 400, A.2d 726 (1978).
In this particular area which directly involves the ethical propriety of attorney conduct, the court has an overarching supervisory power which is not necessarily dependent for its exercise upon the initiative of one of the parties but is inherent in the court's constitutional and statutory function. See, Heiberger v. Clark, 148 Conn. 177 (1961). The Superior Court may consequently restrain or sanction attorney misconductsua sponte. A litigant who relies upon an attorney-client relationship which exists in another case as the basis for his complaint seeking disqualification of the attorney in his own case is a proper party to request an adjudication of the issue because (a) he stands to gain or lose by the adjudication and (b) by invoking the jurisdiction of the court as a party he has a rightful expectation that the proceeding will be conducted according to the applicable rules of professional conduct. The CT Page 13942 plaintiffs are therefore proper parties to request an adjudication of this issue.
 II.
The plaintiffs specifically allege that the defendant's attorney's appearance for the defendants in these cases violates Rule 1.7(a) of the Rules of Professional Conduct adopted and promulgated by the Judges of the Superior Court. Neither this rule nor any other rule of professional conduct directly applies to the facts of this case primarily because the attorney in question is not involved in a conflict situation between present and former clients. As stated above, the court has inherent authority to regulate the conduct of attorneys who are, after all, officers of the court. Heiberger v. Clark, supra at 177. Quite significantly in State v. Jones, 180 Conn. 443, 448 (1980) the court indicated that the codified set of rules which regulate attorney conduct is not the sole source of judicial regulatory authority. After referring to the court's inherent power it went on to state that "the conduct of attorneys is also regulated by the code of professional responsibility" (now replaced by the Rules of Professional Conduct). So, the fact that there is no precise rule which is applicable to the facts does not preclude judicial superintendence of attorney-client conduct.
 III.
With this background the court must now proceed to examine the facts, using as a governing standard, the principles of simple fairness and justice to all sides. State v. Jones, supra
at 7 (Cotter J. dissenting). Drawing on its own experience in pretrying and trying medical malpractice cases which come up the trial list in this judicial district the court is well aware of the serious consequences for the physician which may hang in the balance between a favorable and unfavorable result. Apart from the considerable monetary exposure to which a physician is exposed in a medical malpractice lawsuit, the defendant also runs the risk of suffering a damaged reputation among his patients and peers. The physician also suffers the distinct possibility that his/her malpractice insurance premiums will increase or that his liability policy will be cancelled. But most serious of all is the fact that any adverse result, whether from a plaintiff's verdict or a settlement, will be reported to the National Clearing House which if serious enough could impair the physician's admitting privileges at the hospitals where the CT Page 13943 physician is on staff, thus affecting the physician's very career and livelihood. The stakes, therefore, are extremely high. Under these circumstances the malpractice defendant can be expected to reveal to his attorney his strengths and weaknesses, his successes and failures; in short, his inner most professional secrets. It is obvious that the physician's communications to his attorney under these circumstances are protected by the attorney-client privilege and are not subject to discovery by these plaintiffs. Moreover, the physician's attorney is free to employ this confidential information in his cross examination of the physician in the subject cases in such a way that no confidential information is divulged. In such a case the plaintiffs would be at a severe disadvantage. To permit this to occur would be to permit the defendants to slant the playing field toward their goal. And this is true whether or not there are similarities between the subject cases and the malpractice case.
The fact that Dr. Lewis's treatment in the malpractice case involved the shoulder area whereas his treatment in the subject cases involve a shoulder (Burgos v. Giannakakos), backs and knees does not alter the principles described above. For example, each type of injury would necessarily require Dr. Lewis to expose to the scrutiny of cross examination the competence of his diagnostic power and the soundness of his disability rating methodology.
 IV.
In a different factual context our Supreme Court has delineated the competing interests which the court must weigh and balance in the process of analyzing the issue of disqualification. First, the plaintiffs' interests in having their rights adjudicated in an atmosphere where the defendants are not given a significant advantage; second, the defendants' interest in freely selecting counsel of its choice; third, the public's interest in the scrupulous administration of justice.Goldberg v. Corporate Air, Inc. 189 Conn. 504, 507 (1983).
The most closely analogous case that the court's research has uncovered is U.S. v. James, 708 2nd F.2d 40, [708 F.2d 40], (1983). In that case one Barnes had been convicted of a narcotics offense. His attorneys in that case became the attorneys for one James in a later narcotics prosecution. In James's trial, defense counsel announced that he intended to call Barnes as a witness. The government moved to disqualify counsel citing unfair use of CT Page 13944 confidential information previously acquired through the attorney-client relationship. Barnes joined in the motion.
In affirming the trial court's order of disqualification the court first found that the entire proceeding was substantially related to the present one. For the reasons stated above this court finds that a substantial relationship in the factual allegations in the several cases exists here. Although Barnes joined in the motion the court did not find that critical because it determined that the government had an interest in protecting its witnesses from unfair tactics. In the instant case, although Dr. Lewis has not joined in the motion, he has filed an affidavit with the court which states that he does not "feel comfortable" with the fact that he will be cross examined by the firm, seeing "a potential conflict of interest" between that representation and his testimony on behalf of the injured plaintiffs. Applying the reasoning of the James court to the facts of this case, given such a concern as that expressed by Dr. Lewis when supported with factual justification for that concern, to permit the challenged representation to continue would tilt the balance of fairness in favor of the defendants. The court would add as an additional balancing consideration the fact that under his malpractice insurance policy Dr. Lewis did not have the right to freely select his own attorney to represent him.
Similarly, in U.S. v. O'Malley,786 F.2d 786, [786 F.2d 786], (7th Cir. 1986), the witness in question, though not joining in the disqualification motion, filed an affidavit in which he asserted his attorney-client privilege as to confidences which he revealed to his attorney who later came to represent others in a criminal case in which the witness was going to testify.
In affirming the trial court's disqualification of the attorney in the second proceeding the court found that the defense attorney would have an unfair advantage over the prosecution since his ability to impeach the witness would have been enhanced by the acquisition of confidential information about the witnesses's truthfulness through his past attorney-client relationship. In the subject case it isn't so much a question of Dr. Lewis's credibility (although credibility is always in issue) but rather his techniques, practices and professional judgment.
In conclusion, the balancing of the relevant interests lead the court ineluctably to order disqualification of the firm Bai, CT Page 13945 Pollock Coyne in these three cases.
Mottolese, Judge